**CITY OF KEMMERER, a municipal corporation, Appellant (Plaintiff),**

v.

**Thomas S. WAGNER and Patricia M. Wagner, husband and wife, Appellees (Defendants).**

**Thomas S. WAGNER and Patricia M. Wagner, husband and wife, Appellants (Defendants),**

v.

**CITY OF KEMMERER, a municipal corporation, Appellee (Plaintiff).**

Nos. 92–202, 92–203.

Supreme Court of Wyoming.

Dec. 30, 1993.

Rehearing Denied Feb. 4, 1994.

V. Anthony Vehar and Sharon M. Rose, Vehar, Beppler, Lavery, Rose & Boal, P.C., Evanston, for City of Kemmerer.

F.L. Thomas, Jr., Kemmerer, for Wagners.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

THOMAS, Justice.

The primary issue posed in this case is whether the trial court correctly ordered a new trial on the issue of damages after ruling an exhibit incorporating information about damages was received into evidence improperly. Both parties argue a new trial on the issue of damages is not appropriate. The City of Kemmerer (Kemmerer) contends it was entitled to judgment on the question of liability as a matter of law because Thomas S. Wagner and Patricia M. Wagner (Wagners) did not file a correct claim since they were involved in a partnership, and the other partner did not execute the claim. Consequently, Kemmerer contends no new trial on the issue of damages should be permitted. It appends an issue relating to inadequacy of the proof of damages. The Wagners, in their separate appeal, request reinstatement of the jury verdict, contending the trial court erroneously ordered a new trial on the issue of damages because damages were proved in a proper way. We hold the trial court correctly ruled the evidence of damages found in the claim submitted by the Wagners was received into evidence improperly and correctly ordered a retrial on the issue of damages. We affirm the trial court in the appeal by Kemmerer, concluding there was no partnership; therefore, Kemmerer was not entitled to a directed verdict on the issue of damages. We affirm the trial court in the appeal by the Wagners, holding the claim should not have been received into evidence, and this error affected the determination of damages. The case is remanded for a new trial on the issue of damages according to the order of the district court.

Both parties appeal the decision from the court below. The statement of the issues set forth in Kemmerer's Brief of Appellant is:

A. Did the failure of appellees to submit a notice of claim on behalf of the partnership, comprised of Appellees and Rosendahl, deprive the trial court of jurisdiction over the counterclaim.

B. Did the District Court err in failing to direct a verdict on the partnership issue.

C. Did the District Court err in failing to direct a verdict in Appellant's favor due to lack of competent evidence on the issue of damages.

D. Did the District Court err when it ordered a new trial on the issue of damages.

The Appellees' Brief of the Wagners states the issues in this way:

I. Was there sufficient evidence for the jury to find that on the date Wagners filed notice of claim with the city, there was no longer any partnership between them and Lester Rosendahl?

II. Was there sufficient evidence for the jury to find that the Wagners suffered damages in the sum of $80,000.00?

In the Appellants' Brief of the Wagners, the issues are articulated in this fashion:

I. Whether the admission in evidence by the district court of the unedited notice of claim was an error?

II. Whether the district court .erred in finding that the jury based its verdict on the figure demanded in the notice of claim?

In the Brief of Appellee filed by Kemmerer, it agrees with the statement of the issues framed by the Wagners as appellants.

In 1977, the Wagners formed a partnership with Lester J. Rosendahl (Rosendahl) to purchase and manage Ye Olde Liquor Locker (Liquor Locker) in Kemmerer. No formal partnership agreement was prepared or executed. Early in this business venture, the Wagners and Rosendahl shared expenses and profits equally; however, Rosendahl retired from active participation in the operation of the business and, ultimately, his equity, because of losses sustained by the business, was reduced to "zero." Subsequently, Rosendahl conveyed his interest in the Liquor Locker to the Wagners on May 31, 1987. The Wagners continued to operate the Liquor Locker for a few months, but they decided to close the business in July of 1987.

They winterized the building in which the Liquor Locker business had been conducted, and placed the property for sale. On July 30, 1987, at the request of the Wagners, Kemmerer shut off water service at the meter inside the building, but it failed to locate and shut off the service in the line outside the building. Damage to the building was

discovered in February of 1989, when Wagner found he was unable to enter the building because of a swell in the concrete floor, which also was covered by a build-up of a large sheet of ice preventing the door from opening. It was apparent cold weather had frozen the water in the pipes inside the building, causing them to burst.

On April 3, 1990, counsel for the Wagners prepared a Claim Under the Wyoming Governmental Claims Act which was filed with Kemmerer. After the claim was dishonored, the Wagners brought this action to recover for damages to the building attributable to the negligence of Kemmerer. In resolving the issues, the jury found Kemmerer did have a duty to shut off the water service outside the building. It concluded Kemmerer had breached that duty, and the breach was the proximate cause of the damage to the Wagners' property. The jury then awarded damages in the amount of $80,000 to the Wagners payable by Kemmerer for its negligence. This was precisely the amount requested for repairs in the claim that the Wagners filed with Kemmerer.

We address, initially, the issue of the existence of a partnership. Kemmerer's contention is that, since a partnership was in existence at the time the claim was filed, the issues for a new trial on damages are moot because the Wagners, as individual partners, have no right to assert damage to their individual interests in the partnership property. Kemmerer asserts that the Wagners failed to comply with the Governmental Claims Act (WYO.STAT. §§ 1–39–101 to –120 (1988)) when they did not include Rosendahl as a claimant. The Wagners rely upon the proposition that the partnership had ceased in 1984 when Rosendahl stopped contributing money and services. The Wagners' argument is that, since there was no partnership, it was not necessary to include Rosendahl on the claim.

Our standard remains:

In reviewing a sufficiency-of-the-evidence question, we assume the evidence in favor of the successful party to be true, leaving out of consideration entirely the evidence in conflict, and assigning every favorable inference to the evidence of the successful party that can be reasonably and fairly drawn from it. *City of Rock Springs v. Police Protection Ass'n*, Wyo., 610 P.2d 975 (1980); *Brittain v. Booth*, Wyo., 601 P.2d 532 (1979). In addition, when reviewing a jury verdict, we leave to the jury the duty of ascertaining the facts, reconciling conflict therein and drawing its own inferences if more than one inference is permissible. *Neal v. Wailes*, Wyo., 346 P.2d 132, 134 (1959). Also, when the facts permit the drawing of more than one inference, then it is for the jury to choose which one will be utilized and, if supported by substantial evidence, the jury's choice will be held by us to be conclusive. *Berta v. Ford*, Wyo., 469 P.2d 12, 15 (1970); *Ford Motor Company v. Arguello*, Wyo., 382 P.2d 886 (1963).

*Crown Cork & Seal Co. v. Admiral Beverage Corp.*, 638 P.2d 1272, 1274–75 (Wyo.1982).

In this case, the verdict of the jury was returned on a special verdict form. In pertinent part, it provides:

### VERDICT

We, the Jury duly empaneled and sworn to try this case, after having heard all the evidence and considered the same, do hereby present the following answers to the questions submitted by the Court:

\* \* \* \* \* \*

IV. Without considering the percentages of fault found in question III above, what total amount of damages, if any, do you find was sustained for:

(a) loss of injury to the property $80,000.00
(b) loss profits $ 0

V. Were Thomas Wagner, Patricia Wagner and Lester Rosendahl partners on April 3, 1990, the date the claim was filed with the City of Kemmerer?

Yes _____ No X

■ Our examination of the record satisfies us substantial evidence was presented at trial to justify the jury's determination that the Wagners and Rosendahl were not partners on April 3, 1990 because any partnership between those individuals had terminated before the cause of action arose. Thomas Wagner testified he had operated the Liquor

Locker without Rosendahl since 1984. The Wagners had borrowed $87,000 from the First Wyoming Bank without Rosendahl's participation, and that money was used to pay the balance of the loan for the business made by the Small Business Administration. Rosendahl testified the partnership, indeed, had terminated in 1986. It is clear that Rosendahl transferred his interest to the property in question by a quitclaim deed to the Wagners on May 31, 1987. While there may be conflicting evidence, we hold, in this instance, the jury's determination of no partnership in existence is supported by substantial evidence, and the partnership did not exist in 1989, at the time of the damage to the property, nor in 1990, at the time the claim was filed. The Wagners properly submitted the claim in their capacities as individuals.

Having ruled against Kemmerer on its claim that the issue relating to a new trial on the amount of damages is moot, we next address the arguments of the parties with respect to whether the trial court erred in ordering a new trial on the Wagners' damages. The court sustained the jury's verdict that determined the issue of liability against Kemmerer; stated the evidence was sufficient for the jury to conclude the fair market value of the building and improvements was at least $80,000; but the trial court ruled the unedited claim was admitted into evidence erroneously. The claim was admitted to rebut contentions by Kemmerer of fabrication and deceit, but it also set forth reasons and arguments as to why Kemmerer was liable. The court concluded that the unedited claim may have been used by the jury in their deliberations and, thus, afforded the Wagners an unfair advantage. The claim did contain assertions that ultimately were not supported in the evidence.

 Kemmerer insisted the claim was nothing more than a form of pleading, and it was properly objected to on the ground of lack of relevance. The Wagners argued the claim properly was admitted to show who owned the claim against Kemmerer and who owned the damaged property. The trial court ruled the claim, together with another exhibit, was relevant as it pertained to an issue of credibility of Mr. Wagner that had arisen during trial. We agree with the trial court that the jury well could have afforded substantial weight to the unedited claim, particularly in its award of $80,000, which was the precise amount of damages asserted in the claim. The trial court did err in admitting the unedited claim, and it correctly ruled a new trial should be held on the issue of damages.

Kemmerer contends further that, in this instance, the Wagners failed to prove their damages. Rule 59, Wyo.R.Civ.P., articulates the authority of the trial court to grant a new trial when the evidence is insufficient, but the rule does not permit the granting of a new trial if there is a total failure of proof. Kemmerer argues this is the situation here, and there was no authority for the court to grant a new trial. The Wagners contend they did, in fact, prove the amount of damages through the expert testimony of a real estate broker about market values and through the expert testimony of an engineer as to the cost of repairs. The Wagners assert the jury determined the damages from that testimony, not the amount of the claim, and the jury's award of $80,000 should stand.

In *Ely v. Kirk*, 707 P.2d 706 (Wyo.1985), a case similar to this one with respect to the proof of damages was before this court, and we affirmed the decision of the trial court relating to liability and to damages to personal property, but we reversed the decision with respect to damages to real property, remanding the case for a new trial. In *Ely*, the trial court had found negligence in the violation of a duty imposed upon the operators of a sewage disposal company to deliver sewage to the sewage disposal plant and, instead, permitted the sewage to enter the basement of a private home. Substantial evidence supported the finding of negligence, but no evidence was found to support the figure awarded by the trial court as damages. We said:

> There was no evidence to support the figure of $5,700.00 or any other figure representing the difference in value between a house in which living is over a basement containing sewage on the one hand, and a house without a basement on the other

hand—other than evidence that the house with a sewage filled basement has no value at all; and the trial court's figure of $5,700.00 was obviously not an adjustment from the "no value at all" testimony.

*Ely,* 707 P.2d at 714.

In this case, the $80,000 listed in the claim was simply information alleged in a pleading, and it was not proof of damages. If that information is deleted from the record, it is not possible to determine with particularity what evidence logically supported the jury award of damages to the Wagners.

■ Since the case is to be remanded for a new trial on the issue of damages, we deem it appropriate to remind the parties of the wisdom of this Court uttered some 65 years ago:

> Where the injury to real property is of a permanent character, or cannot be repaired except at great expense, the measure of damages is the difference between the value of the property before and after the injury.
>
> Where the damage to real property is of a temporary character, or where it can be repaired at a small expense, the cost of the repair has often been held to be the measure of damages.

*Town Council of Town of Hudson v. Ladd,* 37 Wyo. 419, 425–26, 263 P. 703, 705 (1928).

This language was quoted by this Court as recently as 1984 in *Anderson v. Bauer,* 681 P.2d 1316, 1324 (Wyo.1984). The court went on to say:

> Either method of determining damages is acceptable. Neither is preferred over the other. These kinds of damages cannot be calculated with certainty. However,
>
> " * * * if there is evidence from which a reasonable estimate of money damages may be made, that is sufficient, the primary objective being to determine the amount of loss, applying whatever rule is best suited for that purpose. * * *"
> *Douglas Reservoirs Water Users Ass'n v. Cross,* Wyo., 569 P.2d 1280, 1284 (1977).

*Anderson* was followed in *Deisch v. Jay,* 790 P.2d 1273 (Wyo.1990).

■ The measure of damages to real property has been discussed in several other cases. We summarize those cases in order to define the current state of the law. We have said, with respect to the proof of damages to real property:

> This court has indicated that the measure of damages for injury to real property is the difference between the value of the property before and after the injury, *Town Council of Town of Hudson v. Ladd,* 37 Wyo. 419, 263 P. 703; however, no hard and fast rule can be laid down for all cases. The primary object is to determine the amount of the loss and whatever rule is best suited to the purpose should be adopted. *Slane v. Curtis,* 41 Wyo. 402, 286 P. 372, 288 P. 12, 69 A.L.R. 906.

*North Central Gas Co. v. Bloem,* 376 P.2d 382, 385 (Wyo.1962).

Later in *Wheatland Irrigation Dist. v. McGuire,* 562 P.2d 287 (Wyo.1977), we said damages were to be measured by depreciation in market value, that is, the price a willing buyer would pay to a willing seller. In *Atlas Constr. Co. v. Slater,* 746 P.2d 352, 359 (Wyo.1987), we relied upon *Bloem,* and added the proposition that "[i]n tort cases, the measure of damages is the amount which will compensate a claimant for *all* the detriment proximately caused by the tort-feasor's breach of duty."

■ In *Ely,* 707 P.2d at 715, we stated: We have already noted that the before and after rule is applicable only when the damage is partial. If the real property was reduced to no value at all, it should be valued by ascertaining the market value as of the time immediately before the destruction. This is not probable inasmuch as the land should have some value even if the house is not usable. The house itself should have some salvage value.

Finally, we said in *Energy Transp. Sys., Inc. v. Mackey,* 650 P.2d 1152 (Wyo.1982), *appeal after remand,* 674 P.2d 744 (Wyo.1984), that proof of before and after values must be by competent and permissible evidence.

■ A fair summary of the state of our damage rules is that, if the damage to the real property is so extensive as to substan-

tially amount to a taking of the property, the measure of damages will be the difference in the market value before and after the damage is inflicted. If the damage is not so extensive as to substantially amount to a taking, the cost of repairs to the property will measure the damages, with incidental damages recoverable in some instances. In any case, the lower of the two figures, cost of repairs as compared to the difference in value before and after, will demonstrate the damage ceiling. In some instances, the finder of fact may have to resolve the issue as to whether the damage was so extensive as to substantially amount to a taking.

In this case, the unedited claim was neither competent nor admissible evidence. The testimony by the expert witness for the Wagners, a real estate broker, also did not meet this test. He testified the listing price of $75,000 with his agency was determined by adding the amount owed to the bank for this property to the amount of broker fees and an approximate $5,000 for profit. His figure was comprised of values for the land, the building, and the contents of the building including glasses, bottles of liquor, and inventory. This witness also testified market value is the value used to compare property with other like properties sold in the area within a recent time period. He continued with his testimony, however, to the effect no comparable properties existed because of the depressed real estate market. He added by way of conclusion that all commercial property sold was sold at a "ridiculously low price."

The Wagners presented another expert witness to testify as to the cost of repair. Again, repair value is not evidence of market value, and using this approach presents a danger of placing the Wagners in a better position than they enjoyed prior to the damage to their property. The cost of repairs might well exceed the value of commercial property in a depressed market.

It is clear that, at the retrial, the Wagners will have a very demanding task when they are charged with establishing the damages to their property because of Kemmerer's negligence. The amount awarded should place the Wagners in the position they enjoyed prior to the damage to their property. The market value should account for the salable land, any salvageable proceeds for the building, and the undamaged contents of the building, all of which should be extricable from the testimony and exhibits in the record. The primary responsibility of the Wagners is to meet the objective of determining the amount of their loss using whatever rule is best suited to provide the jury with adequate information to determine the damage. If there are no comparable sales, there are alternative methods that may be used to establish the value of the property. That value with the appropriate deductions should not exceed the cost of repairs in any award made to the Wagners.

We affirm the ruling by the trial court that liability was correctly and properly determined by the jury. We agree with its ruling that it erred when it admitted the unedited "notice of claim" into evidence. We recognize, as did the trial court, that, quite possibly, the jury arrived at the amount of damages by looking at the amount demanded in the claim, and there was no expert testimony to meet the tests adopted in Wyoming for establishing the damage to real property. We affirm the granting of a new trial on damages by the trial court. The rulings by the trial court are affirmed.