2008 WY 90

**Jeremiah Lee ROGERS, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–07–0115.

Supreme Court of Wyoming.

July 31, 2008.

Representing Appellant: Diane M. Lozano, State Public Defender; Ryan R. Roden, Deputy Public Defender; Tina N. Kerin, Appellate Counsel; Kirk Allan Morgan, Assistant Appellate Counsel; Scott Mitchel Guthrie, Senior Assistant Public Defender. Argument by Mr. Morgan.

Representing Appellee: Bruce A. Salzburg, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Dana Jill Lent, Assistant Attorney General. Argument by Ms. Lent.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Jeremiah Rogers was charged by the State of Wyoming with third degree sex-

ual assault. His wife, LR, is the alleged victim of that assault.[1] Prior to trial, the State expressed its intent to call LR as a witness to testify against her husband. Mr. Rogers contended that LR was entitled to assert a marital privilege and could not be compelled to testify. The district court certified this question:

> Can an alleged victim spouse be compelled by the State of Wyoming to testify against his or her spouse or does the witness-spouse alone have a privilege to refuse to testify adversely and that the witness may be neither compelled to testify nor foreclosed from testifying?

[¶ 2] We conclude that a victim spouse may be compelled by the State of Wyoming to testify against his or her spouse when that spouse is charged with a crime against the victim spouse. Pursuant to Wyo. Stat. Ann. § 1–12–104 (LexisNexis 2007), no marital privilege exists in such a situation.

### FACTS

[¶ 3] On January 22, 2007, an Information was filed charging Mr. Rogers with one count of third degree sexual assault in violation of Wyo. Stat. Ann. § 6–2–304(a)(i).[2] The allegations against Mr. Rogers stem from his relationship with LR. On June 30, 2006, a child was born of this relationship. Genetic testing confirmed that Mr. Rogers is the father of the child. At the time of conception, LR was 15 years old[3], and Mr. Rogers was 25. After the birth of the child, LR and Mr. Rogers married.

[¶ 4] Prior to trial, the State identified LR as a potential witness. According to the district court, "The Defendant's wife has expressed an intention to exercise spousal immunity and indicates that she does not intend

to testify against her husband." Mr. Rogers, in a motion in limine, asserted that LR could not be compelled by the State to testify against him. The State contended that LR could be compelled to testify. The district court did not resolve the issue. Instead, it certified the question to this Court.

### STANDARD OF REVIEW

[¶ 5] In order to answer the certified question, we must interpret Wyo. Stat. Ann. § 1–12–104. Statutory interpretation is a question of law. *Qwest Corp. v. Public Svc. Comm'n of Wyo.*, 2007 WY 97, ¶ 3, 161 P.3d 495, 497 (Wyo.2007). If the statutory language is clear and unambiguous, we follow its plain meaning. If it is ambiguous, we attempt to discern legislative intent by applying principles of statutory construction. *Roden v. State*, 2007 WY 200, ¶ 5, 173 P.3d 369, 371 (Wyo.2007).

### DISCUSSION

[¶ 6] Wyoming's marital privilege has been codified by statute. *Curran v. Pasek*, 886 P.2d 272, 275 (Wyo.1994). Wyo. Stat. Ann. § 1–12–101(a) states, in part:

> (a) The following persons shall not testify in certain respects:
>
> . . .
>
> (iii) Husband or wife, except as provided in W.S. 1–12–104;

Section 1–12–104 states:

> No husband or wife shall be a witness against the other except in criminal proceedings for a crime committed by one against the other, or in a civil action or proceeding by one against the other. They may in all civil and criminal cases be witnesses for each other the same as though the marital relation did not exist.

---

1.  LR was a minor at the time of the assault.

2.  Wyo. Stat. Ann. § 6–2–304(a)(i) (LexisNexis 2005) has since been repealed, but it stated at the time:

    > (a) An actor commits sexual assault in the third degree if, under circumstances not constituting sexual assault in the first or second degree:
    >    (i) The actor is at least four (4) years older than the victim and inflicts sexual intrusion

on a victim under the age of sixteen (16) years.

*See* 2007 Wyo. Sess. Laws 393. This provision has been replaced by Wyo. Stat. Ann. § 6–2–315(a)(i).

3.  The statement of facts accompanying the certified question provides that LR was 15 at the time of conception. The State, in its brief, contends that LR was 14 at the time of conception. For purposes of answering the certified question, it does not matter whether LR was 14 or 15.

[¶ 7]  In order to resolve the issue presented in the certified question, we must focus upon one specific clause from Wyo. Stat. Ann. § 1–12–104: "No husband or wife shall be a witness against the other except in criminal proceedings for a crime committed by one against the other."  The State contends that the "crime against a spouse" exception permits it to compel the testimony of LR because the crime was alleged to have been committed by Mr. Rogers against his spouse.  Mr. Rogers concedes that his spouse is the victim of the alleged crime. Nevertheless, he contends that she cannot be compelled to testify against him against her will.  Stated differently, he appears to argue that, in situations such as the one presented here, the victim spouse retains a privilege that allows her to refuse to testify against her spouse if she elects to exercise the privilege.  We are unable to find any support for Mr. Rogers' position in the language of the statute.  The statute is clear and unambiguous.  No marital privilege exists for either spouse when the crime is alleged to have been committed by one spouse against the other.

[¶ 8]  Generally, all persons are competent to testify and may be compelled to do so.  *E.g.,* Wyo. Stat. Ann. § 1–12–103; W.R.Cr.P. 17. Wyo. Stat. Ann. § 1–12–101 identifies several privileges[4] and refers to Wyo. Stat. Ann. § 1–12–104, for a definition of the marital privilege.  The "crime against a spouse" exception stated in Wyo. Stat. Ann. § 1–12–104 eliminates the privilege in the specific situation where one spouse is charged with a crime against the other.

[¶ 9]  Although the district court recognized that "[t]he apparent meaning of [the statute] would lead one to conclude that the wife, over her objection, could be compelled by threat of contempt, to testify against her husband," the district court questioned whether application of the statute, as written, was appropriate:

> Yet, the holding in *Trammel v. United States,* 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186, 5 Fed.R.Evid. Serv. 737 (1980) certain language in *Engberg v. Mey-*

*er,* 820 P.2d 70, 83 (Wyo.1991) and restated in *Curran v. Pasek,* 886 P.2d 272, 275 (Wyo.1994) informs the court to proceed with caution in reaching that conclusion. It appears the phrase quoted above [regarding the "crime against a spouse" exception] must be narrowly construed as it was only intended to allow the wife to testify over the objection of her husband if she desired to testify.

Ultimately, the district court sought our guidance.  As stated previously, we find that the statute is clear and unambiguous.  Pursuant to Wyo. Stat. Ann. § 1–12–104, the privilege does not exist when one spouse is charged with a crime against the other.  The decisions referred to by the district court, and relied upon now by Mr. Rogers, are distinguishable and do not impact our statutory analysis.  None of the cited decisions involve the "crime against a spouse" exception to marital privilege.

[¶ 10]  In *Engberg,* the defendant was accused of felony murder and armed robbery, neither of which were crimes against his wife.  820 P.2d at 73.  After his direct appeal, he filed an action for post-conviction relief in the district court.  The State called the wife to testify at the hearing.  The wife did not wish to testify, and the district court allowed her to assert the privilege over Mr. Engberg's objection.  *Id.* at 81.  On appeal from the denial of post-conviction relief, the defendant contended that the district court erred by allowing his wife to assert the privilege.  We recognized that one justification for the marital privilege rule was "immunity from the repugnant situation of being condemned by one's spouse or of becoming the instrument of a spouse's condemnation." *Id.* at 83 (quoting 8 Wigmore, *Evidence* § 2241 at 254 (McNaughton rev.1961)).  Because that rationale for the privilege applied equally to the party spouse and the witness spouse, and because the district court's ruling was consistent with the statute, we concluded that no clear and unequivocal rule of law was violated.  *Id.* Because *Engberg* did not involve the "crime against the spouse" exception to the marital privilege, it is of

---

4.  Among the other privileges recognized in Wyo. Stat. Ann. § 1–12–101 are the doctor-patient privilege, attorney-client privilege, and the priest-penitent privilege.

little relevance in the face of the clear statutory exception to marital privilege.

[¶ 11] *Curran* came to this Court as a certified question from the United States District Court for the District of Wyoming. 886 P.2d at 274. *Curran* involved a medical malpractice plaintiff who brought suit against the estate of her deceased physician. *Id.* The plaintiff alleged that the physician, prior to his death, had made statements to his wife regarding his illicit drug use. *Id.* The plaintiff wished to compel the wife's testimony regarding these statements. *Id.* We held that the marital communication privilege survived the death of either spouse, and that the wife could assert the privilege. *Id.* at 276–77. The issue in *Curran* did not involve application of the "crime against a spouse" exception of Wyo. Stat. Ann. § 1–12–104.

[¶ 12] *Trammel* involved a defendant and his wife who were both involved in a conspiracy to import heroin into the United States. 445 U.S. at 42, 100 S.Ct. at 908. Mr. Trammel's wife agreed to testify for the government in exchange for lenient treatment. The district court permitted the wife to testify over her husband's objection. *Id.* at 42–43, 100 S.Ct. at 908. The United States Supreme Court had earlier held in *Hawkins v. United States,* 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958), that the federal common law relating to marital privilege generally barred the testimony of the witness spouse unless both spouses consented to the testimony. *Id.* at 46, 100 S.Ct. at 910. In *Trammel,* the Court held "that the existing rule [of *Hawkins* ] should be modified so that the witness-spouse alone has a privilege to refuse to testify adversely; the witness may be neither compelled to testify nor foreclosed from testifying." *Id.* at 53, 100 S.Ct. at 914. Like both *Engberg* and *Curran, Trammel* did not involve a crime against the defendant's spouse. Additionally, *Trammel* involved application of the federal common law marital privilege. No federal statute or rule defined the privilege.

[¶ 13] The few Wyoming decisions that involve the "crime against a spouse" exception to spousal privilege are more instructive. In *Chamberlain v. State,* we examined the scope of this exception. 348 P.2d 280 (Wyo.

1960). Mr. Chamberlain was charged with statutory rape of his 13–year–old daughter. *Id.* at 281. During the trial, Mr. Chamberlain testified that his wife convinced the daughter to make the criminal allegations. *Id.* The State called his wife as a witness in rebuttal, and Mr. Chamberlain asserted marital privilege. The district court allowed the wife's testimony over his objection. *Id.* On appeal, Mr. Chamberlain asserted that, because he was accused of a crime against his daughter, the exception to spousal immunity did not apply and his wife should not have been permitted to testify against him. We noted that the "crime against a spouse" exception set forth by the Wyoming legislature was broader than existed at common law. *Id.* at 283–84. When viewing the statute in light of the legislative intent to expand the common law exception—that is, to narrow the privilege—we determined that Mr. Chamberlain's crime fell within the exception of a crime committed by one against the other. *Id.* at 284. In doing so, we endorsed the following passage from Justice Stewart's concurrence in *Hawkins:*

> Any rule that impedes the discovery of truth in a court of law impedes as well the doing of justice. When such a rule is the product of a conceptualism long ago discarded, is universally criticized by scholars, and has been qualified or abandoned in many jurisdictions, it should receive the most careful scrutiny. Surely "reason and experience" require that we do more than indulge in mere assumptions, perhaps naïve assumptions, as to the importance of this ancient rule to the interests of domestic tranquility.

*Chamberlain,* 348 P.2d at 285 (quoting *Hawkins,* 358 U.S. at 81–82, 79 S.Ct. at 140 (Stewart, J., concurring)).

[¶ 14] In *Seyle v. State,* the defendant was convicted of manslaughter involving the death of his two-year-old stepson. 584 P.2d 1081, 1083 (Wyo.1978). We addressed Mr. Seyle's contention that the prosecutor's comment on Mr. Seyle's failure to call his wife to testify on his behalf constituted an infringement on the exercise of spousal privilege. Neither the State nor Mr. Seyle attempted to introduce the wife's testimony. Mr. Seyle

never formally attempted to invoke the privilege. We determined that the wife's testimony, had the State called her as a witness, would have fit within the "crime against a spouse" exception pursuant to our decision in *Chamberlain v. State,* 348 P.2d 280 (1960). *Seyle,* 584 P.2d at 1086. We stated that the wife's "status was that of any other witness. She was equally available to the defense and the prosecution." *Id.* We concluded that "there was no marital privilege, precluding the wife's testimony against the defendant, which could be infringed by the prosecutor's comments." *Id.*

[¶ 15] Simply put, our precedent is consistent with our statutory analysis. Where the exception to the privilege applies, the witness spouse should be treated as any other witness. Either party may compel the testimony of the witness spouse.

[¶ 16] Two additional points raised by the parties warrant our attention. First, Mr. Rogers cites statutes from other states that explicitly provide that the "crime against a spouse" exception makes the witness spouse competent, but not compellable, to testify against the party spouse. *E.g.,* Miss.Code Ann. § 13–1–5 (2007).[5] *Also* Ga.Code Ann. § 24–9–23 (2007); N.C. Gen.Stat. § 8–57 (2007). Mr. Rogers claims that, "[a]bsent express direction from the legislature on whether a spouse may be forced to testify against the other spouse, [Wyo. Stat. Ann.] § 1–12–104 is ambiguous." We disagree. The fact that Wyoming's legislature has defined the privilege differently than other states is of no relevance in determining whether Wyo. Stat. Ann. § 1–12–104 is ambiguous. We determine ambiguity by reviewing the plain language of the statute. *See Brown v. Arp and Hammond Hardware Co.,* 2006 WY 107, ¶ 17, 141 P.3d 673, 679 (Wyo.2006). We look at other sources to determine a statute's meaning only if we find

the statute ambiguous or vague. *E.g., Stewart Title Guar. Co. v. Tilden,* 2003 WY 31, ¶ 6, 64 P.3d 739, 741 (Wyo.2003). As previously stated, we do not find that Wyo. Stat. Ann. § 1–12–104 is ambiguous. *Supra,* ¶ 7.

[¶ 17] Second, each party has asserted a policy argument. The State suggests that the existence of the privilege should be determined on a case-by-case basis by weighing the policies favoring application of the privilege against the policy reflected in the criminal statute. The State contends that, in this case, application of that process results in a determination that the witness spouse should not be entitled to invoke the privilege. The State relies upon *Wyatt v. United States,* 362 U.S. 525, 80 S.Ct. 901, 4 L.Ed.2d 931 (1960). In *Wyatt,* the defendant was convicted of knowingly transporting a woman, who he later married, in interstate commerce for the purpose of prostitution (Mann Act). 362 U.S. at 525–26, 80 S.Ct. at 902. The Supreme Court held that the wife could be compelled to testify. *Id.* at 531, 80 S.Ct. at 905. The Court determined that the policy objectives reflected in the Mann Act outweighed the policy of marital harmony reflected in the marital privilege. *Id.* In contrast to the State's position, Mr. Rogers asks this Court to weigh the underlying purpose of spousal immunity against the State's interest in prosecuting a crime against a spouse, and claims that the interest in marital harmony should always prevail.

[¶ 18] We find neither approach to be appropriate. In the federal system, the application of marital privilege is generally governed by federal common law. *E.g.,* F.R.E. 501; Bruce I. McDaniel, *Marital Privilege Under Rule 501 of Federal Rules of Evidence,* 46 A.L.R. Fed. 735 § 3 (2008). Congress has not expressed a particular policy preference regarding marital privilege. The Wyoming legislature, however, has imple-

5. Miss.Code Ann. § 13–1–5 states:
   Husbands and wives may be introduced by each other as witnesses in all cases, civil or criminal, and shall be competent witnesses in their own behalf, as against each other, in all controversies between them. Either spouse is a competent witness and may be compelled to testify against the other in any criminal prosecution of either husband or wife for a criminal act against any child, for contributing to the

neglect or delinquency of a child, or desertion or nonsupport of children under the age of sixteen (16) years, or abandonment of children. But in all other instances where either of them is a party litigant the other shall not be competent as a witness and shall not be required to answer interrogatories or to make discovery of any matters involved in any such other instances without the consent of both.

mented policy through legislation. In choosing to provide an exception to spousal privilege, the legislature has decided that, in cases of a crime by one spouse against another, the State's interest in discerning the truth outweighs the State's interest in preserving marital harmony. It is the legislature's function to establish public policy in this area, and we decline both Mr. Rogers' and the State's invitations to second guess its decision. *See Union Pac. Resources Co. v. Dolenc,* 2004 WY 36, ¶ 21, 86 P.3d 1287, 1294 (Wyo.2004).

[¶ 19] In summary, the marital privilege does not apply when one spouse is charged with a crime against the other. When the exception applies as set forth in Wyo. Stat. Ann. § 1–12–104, the witness spouse may be compelled to testify.

[¶ 20] We remand this case to the district court for proceedings consistent with this opinion.