2009 WY 88

**Sandon W. MORRIS, Appellant (Defendant),**

**v.**

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–08–0177.**

Supreme Court of Wyoming.

July 10, 2009.

Representing Appellant: Diane M. Lozano, Wyoming State Public Defender; Tina N. Kerin, Appellate Counsel; and Eric M. Alden, Senior Assistant Appellate Counsel. Argument by Mr. Alden.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Graham M. Smith, Assistant Attorney General. Argument by Mr. Smith.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] A jury convicted Sandon W. Morris of felony property destruction. He appeals the conviction claiming: (1) the State pre-

sented insufficient evidence that he "knowingly" damaged the property; (2) plain error occurred when the district court failed to instruct the jury concerning the meaning of "knowingly;" and (3) the prosecutor incorrectly defined the term "knowingly" in closing argument and such argument constituted misconduct requiring reversal of his conviction. His fourth contention is that the district court abused its discretion when it awarded restitution based upon the fair market value of the damaged property. We reverse and remand on the basis of the prosecutor's misconduct in closing argument.

## ISSUES

[¶ 2] Mr. Morris presents the following issues:

1. The State did not present sufficient evidence to prove that he "knowingly" damaged the property of another.

2. The trial court committed error in failing to instruct the jury on the element of "knowingly."

3. The trial court committed plain error in allowing the prosecutor to misdefine the element of "knowingly" to the jury.

4. The sentence improperly assessed restitution.

## FACTS

[¶ 3] On the night of June 20, 2007, C.P., a high school student, parked her 1994 Toyota Tercel in the parking lot of a McDonald's Restaurant in Evanston, Wyoming, while she and her boyfriend went "cruising" in his car. When her boyfriend returned to the parking lot later, he found her vehicle had been damaged. C.P. reported the damage to the police department, and Patrol Sergeant Douglas Matthews investigated.

[¶ 4] Sergeant Matthews inspected the vehicle and observed that the top of the car was caved in, there were scratches all over the hood, there were scuff marks and scratches on the trunk, and one of the quarter panels was kicked in. Sergeant Matthews later spoke with Mr. Morris who said he could have been at McDonald's that night but did not damage any vehicles. Sergeant Matthews also spoke with Randy Stone who

said he saw Mr. Morris jump on the vehicle. C.P. told Sergeant Matthews an automobile repair company estimated the cost of repairs at $2,394.98.

[¶ 5] Based on the information Sergeant Matthews obtained, the State charged Mr. Morris with felony destruction of property in violation of the following statute:

§ 6-3-201. **Property destruction and defacement; grading; penalties; aggregated costs or values.**

(a) A person is guilty of property destruction and defacement if he knowingly defaces, injures or destroys property of another without the owner's consent.

(b) Property destruction and defacement is:

. . . .

(iii) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the cost of restoring injured property or the value of the property if destroyed is one thousand dollars ($1,000.00) or more.

Wyo. Stat. Ann. § 6-3-201 (LexisNexis 2009). Mr. Morris entered a plea of not guilty to the charge. A jury trial convened and concluded when the jury returned a guilty verdict. The district court sentenced Mr. Morris to serve two to four years, splitting the sentence so that he would serve one year in the Uinta County Detention Center and four years supervised probation. The district court further ordered Mr. Morris to pay restitution to C.P. in the amount of $1,400.00.

## DISCUSSION

### 1. Sufficiency of the evidence that Mr. Morris "knowingly" destroyed property

[¶ 6] Mr. Morris claims that the State did not present sufficient evidence to prove the "knowingly" element of the crime. In determining whether there was sufficient trial evidence to sustain a conviction, we apply the following standard of review:

[W]e examine and accept as true the State's evidence and all reasonable inferences which can be drawn from it. We do

not consider conflicting evidence presented by the defendant. We do not substitute our judgment for that of the jury; rather, we determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt. This standard applies whether the supporting evidence is direct or circumstantial.

*Butz v. State*, 2007 WY 152, ¶ 10, 167 P.3d 650, 653 (Wyo.2007).

[¶ 7] The district court instructed the jury on the elements of the offense as follows:

### INSTRUCTION NO. 13

The elements of the crime of Property Destruction and Defacement, where the cost of restoring the property is $1,000.00 or more, as charged in this case are:

1. On or about the 20th day of June, 2007

2. In Uinta County, Wyoming

3. The Defendant, Sandon W. Morris

4. Knowingly defaced a 1994 Toyota Tercel belonging to [C.P.].

5. Without the consent of the owner.

6. And the cost of restoring the defaced property is $1,000.00 or more.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty of Property Destruction and Defacement where the cost of restoring the property is $1,000.00 or more.

If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty of Property Destruction and Defacement where the cost of restoring the property is $1,000.00 or more.

The district court also instructed the jury on the elements of the lesser included offense of destruction or defacement of property where the cost of restoring the property is less than $1,000.00, which is a misdemeanor. Wyo. Stat. Ann. § 6–3–201(a)(i) (LexisNexis 2009).

[¶ 8] The district court instructed the jury that the term " 'property' means anything of value whether tangible or intangible, real or personal, public or private." The district court did not instruct the jury on the meaning of the term "knowingly" or how it was to be construed in the context of the remaining statutory language. Mr. Morris contends that in order to prove that he knowingly defaced the vehicle, the State had to prove that when he jumped on the car, he knew he would damage it, intended to damage it, or was aware that he would damage it. He asserts the State presented no evidence to show any of those things; rather, the State's evidence showed only that he was "goofing around," and the defacement was the unintended result of his horseplay. Given the absence of any proof that he knew his act would deface the vehicle or that he had any intent at all to damage it, Mr. Morris contends the conviction cannot stand.

[¶ 9] The State responds that the evidence showed Mr. Morris knowingly jumped on the vehicle, and that was all the evidence required to support a conviction under the statute. The State contends it did not have to show that Mr. Morris was aware of the extent of the damage his actions would cause, and the jury reasonably inferred from the evidence that he knowingly defaced the property.

[¶ 10] In addressing Mr. Morris' sufficiency of the evidence claim, it is necessary to interpret the property destruction statute. Statutory interpretation is a question of law. *Rogers v. State*, 2008 WY 90, ¶ 5, 189 P.3d 265, 266 (Wyo.2008). If the statutory language is clear and unambiguous, we follow its plain meaning. *Id.* If it is ambiguous, we attempt to discern legislative intent by applying principles of statutory construction. *Id.*

[¶ 11] As quoted above, § 6–3–201(a) provides that a person is guilty of property destruction or defacement if he "knowingly defaces, injures or destroys property." We have said that the word "knowingly" does not have a technical meaning under the law separate from its ordinary meaning. *Butz*, ¶ 20, 167 P.3d at 655. We further have said that the ordinary meaning of "knowingly" is "with

awareness, deliberateness, or intention" as distinguished from inadvertently or involuntarily. *Id.* Applying the ordinary meaning of the word to the language contained in the statute, it is clear that Mr. Morris violated § 6–3–201(a) if, with awareness, deliberateness or intention, he defaced the vehicle; it likewise is clear that he did not violate the provision if he inadvertently or involuntarily defaced the vehicle.

[¶ 12]   During the trial, the State presented C.P.'s testimony that when she left her car in the McDonald's parking lot on June 20, 2007, there was one dent on the driver's side from when someone previously backed into her; otherwise, it was in good condition. When she saw her car later that night:

> [T]he roof was caved in and the quarter panel was kicked in.  And there was boot prints and handprints all over it.  It looked like somebody had slid down the front.
>
> . . . .
>
> It looked like somebody had crawled on it, onto the trunk, sat on it with all of their weight, and then slid down the front.  It was just caved in completely.

C.P. testified that when she left her car in the parking lot that night, there were trucks parked in the lot and Mr. Morris was there with some of his friends.  Mr. Stone testified that he was in the McDonald's parking lot and saw Mr. Morris run from his brother's girlfriend and slide across the roof of the car. He testified they were goofing around; Mr. Morris was running from the girl ". . . cuz he stole her soda.  And he slid across the top of the car."  He testified he heard metal buckling as Mr. Morris slid across the roof.

[¶ 13]   Accepting this evidence and all reasonable inferences which can be drawn from it as true, and without considering conflicting evidence presented by Mr. Morris or substituting our judgment for that of the jury, we hold the jury reasonably could have concluded that the State proved, beyond a reasonable doubt, that Mr. Morris knowingly defaced, injured, or destroyed property belonging to C.P. without her consent.  The State presented sufficient evidence to sustain the conviction.

## 2.  Failure to Instruct Jury Concerning "Knowingly"

[¶ 14]   Mr. Morris contends that the district court committed fundamental error requiring reversal when it failed to instruct the jury as to the meaning of the term "knowingly."  He cites cases such as *Seymore v. State,* 2007 WY 32, 152 P.3d 401 (Wyo.2007) and *Miller v. State,* 904 P.2d 344 (Wyo.1995) in which this Court has held that a jury must be instructed on every essential element of the offense charged.  Absent an instruction informing the jury as to the circumstances under which it could find that he knowingly destroyed or defaced the vehicle, he asserts his conviction must be reversed. The State contends the word "knowingly" does not have a technical meaning so different from its ordinary meaning that the jury would not understand it; therefore, the district court did not err in failing to instruct the jury on the meaning of the word.

[¶ 15]   A trial court's failure to instruct on an element of a crime is not fundamental error requiring reversal, but rather a trial error.  *Granzer v. State,* 2008 WY 118, ¶ 18, 193 P.3d 266, 272 (Wyo.2008), abrogating *Seymore.*  When a defendant objects at trial to the failure to instruct, the harmless error standard governs this Court's review; when no trial objection was made, we review for plain error.  *Id.* Because Mr. Morris did not object to the district court's jury instructions or offer an instruction of his own defining the word "knowingly," we review his claim for plain error.  Under the plain error standard, Mr. Morris must show that a clear and unequivocal rule of law was violated, the violation clearly appears in the record, and it resulted in denial of a substantial right to his material prejudice.  *Granzer,* ¶ 19, 193 P.3d at 272.

[¶ 16]   We previously have held in the context of other criminal statutes that the term "knowingly" does not have a technical meaning under the law separate from its ordinary meaning so as to require an instruction defining it.  In *Butz,* ¶ 19, 167 P.3d at 655, we held no plain error occurred when the district court did not instruct the jury on the meaning of "knowingly and willfully" in the context of Wyo. Stat. Ann. § 6–4–405(b)

(LexisNexis 2009), the child endangerment statute. In *Schmidt v. State*, 2001 WY 73, ¶ 24, 29 P.3d 76, 83 (Wyo.2001), we held no error, plain or otherwise, occurred when the district court failed to instruct the jury on the meaning of "knowingly" in the context of the indecent liberties statute, Wyo. Stat. Ann. § 14–3–105 (LexisNexis 2001). From these cases, it would seem clear that the district court's failure to instruct on the meaning of the word "knowingly" was not plain error.

[¶ 17] Mr. Morris argues, however, that the mental state required to commit the offense charged is an essential element of the crime. He cites cases in which we have said that the test for whether the jury has been instructed on the necessary elements of the crime charged is whether the instruction "leaves no doubt as to under what circumstances the crime can be found to have been committed." *Compton v. State*, 931 P.2d 936, 940 (Wyo.1997); *Miller v. State*, 904 P.2d 344, 348 (Wyo.1995). He asserts that the jury instruction in his case left doubt as to whether the jury had to find that he knew he was jumping on the car or, instead, knew that in jumping on the car, he would cause damage.

[¶ 18] Whether or not Mr. Morris' argument would have merit in a different context, it does not establish plain error because it does not show that the district court violated a clear and unequivocal rule of law. In light of our precedent holding that the word "knowingly" is not a technical term requiring an instruction on its meaning, and the lack of any established rule requiring an instruction on the meaning of "knowingly," Mr. Morris cannot establish plain error.

### 3. Allowing Prosecutor to Define "Knowingly"

[¶ 19] During closing argument, the prosecutor stated as follows:

What does the State have to show other than who did it? That is that he knowingly defaced the property of another person. Now, we don't have an instruction on knowingly. The reason for that is there's not really a pattern instruction. But Black's Law Dictionary has defined it and

it has told us that it is a person who knew what he was about to do and with that knowledge, proceeded to do it. So we're not talking about somebody who's unconscious or somebody who didn't realize what his actions would have resulted in. Somebody who intentionally acted in a manner that he did with knowledge of what he was doing. So he didn't have to intend to cause damage. He didn't have [to] intend to be malicious. He didn't have to intend to be mean. He had to know that he was stepping on a car and that is it. He knew what he was doing.

Mr. Morris asserts that it was plain error for the prosecutor to instruct the jury that, according to the Black's Law Dictionary definition of "knowingly," the State had to prove only that he knowingly jumped on the car in order to meet its burden of proving that he "knowingly" defaced it. He cites cases in which courts have held that it is the trial court's duty to instruct the jury on matters of law and improper for counsel to do so. He also contends the prosecutor committed plain error because the statement was inaccurate in two respects: First, Black's Law Dictionary does not define "knowingly" the way the prosecutor stated and, second, the plain language of § 6–3–201(a) required the State to prove that he jumped on the car knowing it would cause damage. Our ultimate conclusion that the verdict might have been different but for the prosecutor's misstatement may seem inconsistent with our holding that sufficient evidence supported the conviction. However, in the discussion above we concluded only that "knowingly" did not require further definition for the jury to comprehend its meaning. The issue of whether the quoted argument constitutes prosecutorial misconduct requires an entirely different analysis. In considering the sufficiency of the evidence, we looked only at the evidence the State presented and did not consider the impact of closing arguments. Accepting the State's evidence as true, we concluded the jury reasonably could have inferred Mr. Morris was aware the vehicle would sustain damage if he jumped on it. In considering the prosecutorial misconduct issue, however, we evaluated all of the evidence presented in

light of the prosecutor's closing argument. Evaluated from that perspective, we will conclude that a reasonable probability exists that the jury convicted Mr. Morris because it believed evidence that he acted inadvertently required a finding of guilt. That proposition is not correct as a matter of law.

[¶ 20] The State responds that the prosecutor's recitation of the law dictionary definition of the term "knowingly" did not amount to an instruction on the law, there is no clear rule of law prohibiting such argument, and Mr. Morris has failed to show that he was prejudiced by the statement. The State asserts that the prosecutor used the dictionary definition merely as a rhetorical device to convey the plain and ordinary meaning of "knowingly."

[¶ 21] Because no objection was made at trial, we review for plain error, requiring Mr. Morris to demonstrate that the record clearly reflects that the prosecutor made the statement, the statement transgressed a clear and unequivocal rule of law, and Mr. Morris was denied a substantial right which materially prejudiced him. *Evenson v. State*, 177 P.3d 819, 823 (Wyo.2008). We will reverse if there is a reasonable probability that the verdict would have been more favorable to the appellant if the error had not occurred. Allegations of prosecutorial misconduct are evaluated within the context of the entire record and the argument as a whole. *Id.*

[¶ 22] It is clear from the record that the prosecutor made the statement giving rise to Mr. Morris' claim. Therefore, Mr. Morris has shown the first prong of plain error. As we have discussed, the plain language of § 6–3–201 required the State to prove that Mr. Morris knowingly, that is, with awareness, deliberateness or intention, defaced the vehicle. Evidence that Mr. Morris inadvertently defaced the vehicle would not have been sufficient to support a conviction under the statute. We agree with Mr. Morris that the prosecutor misstated the law when she told the jury that all the State had to show was that he jumped on the car, and that it did not have to show that he intended to damage it. Giving the words their plain meaning, the statute required proof that Mr.

Morris deliberately damaged the vehicle or intended that result. Mr. Morris has demonstrated the second requirement for plain error.

[¶ 23] Evaluating the statement within the context of the entire record, we further conclude that Mr. Morris has demonstrated that he was denied a substantial right which materially prejudiced him. Considering the State's evidence—Mr. Morris was goofing around and stole a girl's soda; she chased him and he ran from her, sliding across the roof of C.P.'s car in the process— there is a reasonable probability that the verdict would have been more favorable to Mr. Morris, *but for* the prosecutor's misstatement to the jury. Had the prosecutor not told the jury that all the State had to prove was that Mr. Morris jumped on the vehicle, and that it did not have to prove he intended to cause damage, there is a reasonable probability that it would have concluded from the State's evidence that his act was inadvertent and he was not guilty of property destruction. Mr. Morris has demonstrated that plain error resulted from the prosecutor's misstatement, and for that reason his conviction must be reversed.

### 4. *Restitution*

[¶ 24] Our conclusion that Mr. Morris' conviction must be reversed also requires that we reverse the underlying sentence. Nonetheless, we will comment briefly on this matter as it may arise again on reversal. Mr. Morris' claim is that the district court erred in ordering him to pay restitution in the amount of $1,400.00, the estimated value of the vehicle before the damage. He contends that the amount did not account for the fact that C.P. continued to drive the car and it retained value after the damage. The State responds that the vehicle's fair market value was the appropriate measure for the restitution award.

[¶ 25] A sentencing court has statutory authority to "fix a reasonable amount as restitution owed to each victim for actual pecuniary damage resulting from the defendant's criminal activity." Wyo. Stat. Ann. § 7–9–103(b) (LexisNexis 2009). "Pe-

cuniary damages" are defined in pertinent part as "all damages which a victim could recover against the defendant in a civil action arising out of the same facts or event[.]" Wyo. Stat. Ann. § 7–9–101(a)(iii) (LexisNexis 2009). We review factual challenges to district court orders awarding restitution for abuse of discretion. *Glover v. State*, 2007 WY 169, ¶ 5, 169 P.3d 553, 555 (Wyo.2007). An order awarding restitution should be supported by sufficient evidence to afford a reasonable basis for estimating the loss. *Id.*

[¶ 26] The only evidence presented at trial concerning the vehicle's value was that C.P. paid $1,200.00 for it two years earlier when it had approximately 140,000 miles on it. The State requested restitution in the amount of $1,400.00 based upon the 2007 Kelly Blue Book value for a car of the same year, make and model in fair condition. Although evidence of the Blue Book value was not presented at trial, defense counsel conceded at the sentencing hearing that he did not object to the $1,400.00 request contained in the pre-sentence investigation (PSI). He argued, however, that restitution based upon the vehicle's fair market value did not account for the fact that C.P. still had the vehicle and was driving it. It is not clear from the record whether the district court ordered Mr. Morris to pay the $1,400.00 because defense counsel did not object to the PSI on that basis or because it concluded the fair market value was the appropriate measure of restitution.

[¶ 27] From our review of the hearing transcript, we conclude that defense counsel did not waive the issue by his failure to object to the PSI because he sufficiently placed it before the sentencing court by challenging the appropriateness of the amount at the sentencing hearing. Compare *Chippewa v. State*, 2006 WY 11, ¶ 7, 126 P.3d 129, 131 (Wyo.2006), holding that the defendant waived the right to contest a restitution award when he voluntarily accepted the restitution amount as part of his plea agreement and failed to present specific argument challenging the appropriateness of the amount at the sentencing hearing.

[¶ 28] The determination of "actual pecuniary damage" within the meaning of § 7–9–101(a)(iii) is usually a fairly simple and direct calculation based upon fair market value, or some other similar test. *Bush v. State*, 2003 WY 156, ¶ 14, 79 P.3d 1178, 1184 (Wyo.2003). In the context of a civil action, we said that when property is not entirely destroyed, but partially damaged, the proper measure of damages is its value before the damage less its value after the damage. *Ely v. Kirk*, 707 P.2d 706, 715 (Wyo.1985). See also, *City of Kemmerer v. Wagner*, 866 P.2d 1283, 1287 (Wyo.1993) (reminding the parties that when the injury to real property is of a permanent character, or cannot be repaired except at great expense, the measure of damages is the difference between the value of the property before and after the injury).

[¶ 29] Should this same issue arise in any proceedings upon remand, the district court must take into account the prevailing law summarized above.

[¶ 30] Reversed and remanded for further proceedings consistent with this opinion.

HILL, J., delivers the opinion of the Court; GOLDEN, J., writes separately concurring in part, dissenting in part.

GOLDEN, Justice, concurring in part and dissenting in part.

[¶ 31] I concur in the disposition of Issue 2. I perceive no error in the jury instructions.

[¶ 32] I also agree that the evidence was sufficient to sustain Morris' conviction. I disagree, however, with the majority opinion's reasoning on this issue. I believe the majority opinion blurs the distinction between general intent and specific intent crimes. This Court has consistently ruled that criminal statutes that include the mental element "knowingly" are general intent crimes. *See, e.g., Butz v. State*, 2007 WY 152, ¶ 14, 167 P.3d 650, 654 (Wyo.2007) ("knowingly and willfully" exposing a child to methamphetamine, Wyo. Stat. Ann. § 6–4–405 (LexisNexis 2007) ); *King v. State*, 2002 WY 27, ¶ 23, 40 P.3d 700, 706 (Wyo.2002) ("intentionally and knowingly" causing bodily injury to a peace officer, Wyo. Stat. Ann. § 6–5–204(b) (LexisNexis 2007) ). We have also held that criminal statutes describing a

particular act without reference to intent to do a further act or achieve a future consequence describe general intent crimes. *See Cox v. State,* 829 P.2d 1183, 1185–86 (Wyo. 1992); *Dean v. State,* 668 P.2d 639, 642 (Wyo. 1983). By its plain language, § 6–3–201 is a general intent crime. The State, therefore, was simply required to prove that Morris intentionally jumped on the car, not that he intended to cause damage to it. The evidence clearly supports that conclusion.

[¶ 33] Because I believe § 6–3–201 is a general intent crime, I cannot agree with the majority opinion's conclusion that the quoted portion of the prosecutor's closing argument constitutes reversible error. In my opinion, the prosecutor's comments correctly reflect Wyoming law on general intent crimes. In any event, the comments of the prosecutor certainly do not go so far as to invite the jury to convict Morris if it found his conduct was inadvertent, as the majority opinion suggests.

[¶ 34] For the above reasons, I must respectfully dissent from the majority opinion's ultimate disposition in this case. Morris' conviction should be upheld and the matter of restitution should be addressed on the merits.