2002 WY 27

Victor A. KING, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 99–193.

Supreme Court of Wyoming.

Feb. 15, 2002.

Sylvia Lee Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; Diane E. Courselle, Director, Defender Aid Program; and Aaron N. Thompson and Kimberly Corey, Student Interns., Representing Appellant.

Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; T. Alan Elrod, Assistant Attorney General; Theodore E. Lauer, Director, Prosecution Assistance Program; and John M. Kuker, Student Intern., Representing Appellee.

Before LEHMAN, C.J., and GOLDEN, HILL, and KITE, JJ.

LEHMAN, Chief Justice.

[¶ 1] Claiming his trial counsel was ineffective, Victor King appeals from the judgment and sentence entered after a jury found him guilty of two counts of felony assault on a peace officer. We affirm.

### ISSUES

[¶ 2] King submits the following issue for our consideration:

Must Mr. King's conviction be reversed and remanded because trial counsel failed to provide Mr. King with effective representation in violation of Mr. King's constitutional rights under Wyoming Constitution Article 1, Section 10 and the United States Constitution, Amendments VI and XIV?

A. Was Mr. King's trial counsel ineffective because he failed to confront the State's extensive use of prior bad acts evidence against Mr. King?

B. Was Mr. King's trial counsel ineffective because he failed to educate himself to relevant case law and, as a result, failed to object to the prosecution's improper closing argument?

C. Was Mr. King's trial counsel ineffective because he failed to advocate zealously for Mr. King by abandoning a proper intoxication defense theory and by proffering a legally incorrect instruction on the intoxication defense?

D. Was Mr. King's trial counsel ineffective because he argued for a legally improper lesser included offense?

E. Was Mr. King's trial counsel ineffective because his errors, taken separately or together, so prejudiced Mr. King that there is a reasonable probability that, but for counsel's errors, Mr. King would have enjoyed a more favorable outcome at trial?

### FACTS

[¶ 3] On the morning of July 15, 1998, Sergeant Doug Matthews and Officer Rhett Groll arrived at an apartment in the South Valley Apartments in Evanston, to talk to appellant Victor King (King). The officers arranged for King to meet with a detective at the police department at noon to discuss a burglary that had occurred. Around noon, the same officers were called to investigate a report that King was causing a disturbance at the Chief Washakie Apartments. Sergeant Matthews arrived first and was met by the apartment manager, who told Sergeant Matthews that King had been on the property without his shirt, ranting and making threats but that he had left and walked across the street toward the South Valley Apartments.

[¶ 4] Sergeant Matthews advised Officer Groll, who was en route, of the situation, and the two met in the parking lot of the South Valley Apartments. The officers began looking for King and asking people if they had seen him. No one admitted to knowing where King was, but Officer Groll finally spotted him reclined in the front passenger seat of a parked car. Officer Groll told King to get out of the car. King initially refused to open the car door but eventually did open the door and leave the vehicle.

[¶ 5] Sergeant Matthews noticed that King smelled of alcohol, was very agitated, and had a "wild look in his eye." King insisted he had not broken the law but did not explain to the officers what had happened at the Chief Washakie Apartments. The officers decided to arrest King for breach of the peace, and Officer Groll informed King of their intentions. King responded that he was not going to jail, and he punched Sergeant Matthews in the shoulder, knocking him back a couple of feet. When Officer Groll tried to restrain him, King punched him in the shoulder, knocking him back as

well. King then turned and ran about twenty feet, but when he realized he could not outrun the officers, he turned around and assumed a fighter's stance. The officers attempted to spray King with pepper spray, and Officer Groll grabbed King in an effort to get him to the ground. King put up a struggle and in the process hit Officer Groll in the chin and face with his fist and also kneed him in the groin. Both officers testified that these punches were painful.

[¶ 6] The officers were finally able to wrestle King to the ground, but King continued to struggle until Sergeant Matthews managed to handcuff one of his wrists. At that point, King announced, "I'm done. I give up." King was arrested and charged with two counts (one for each officer) of intentionally and knowingly causing or attempting to cause bodily injury to a peace officer engaged in the lawful performance of his official duties. A public defender was appointed to represent King, and the case went to trial. The jury returned a guilty verdict on both counts, and the trial court sentenced King to serve concurrent terms in the Wyoming State Penitentiary of not less than four nor more than eight years on each count. King appeals from these convictions.

### STANDARD OF REVIEW

[¶ 7] King's argument to this court is that his trial counsel performed so deficiently that he was denied a fair trial. He identifies five specific portions of his trial during which he claims his counsel's representation was ineffective.

[¶ 8] This court summarized our standard of review for claims of ineffective assistance of counsel in *Jackson v. State*, 902 P.2d 1292, 1295 (Wyo.1995):

When reviewing a claim of ineffective assistance of counsel, the paramount determination is whether, in light of all the circumstances, trial counsel's acts or omissions were outside the wide range of professionally competent assistance. *Herdt v. State*, 891 P.2d 793, 796 (Wyo.1995); *Starr v. State*, 888 P.2d 1262, 1266–67 (Wyo. 1995); *Arner v. State*, 872 P.2d 100, 104 (Wyo.1994); *Frias v. State*, 722 P.2d 135,

145 (Wyo.1986). The reviewing court should indulge a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Herdt*, at 796; *Starr*, at 1266; *Arner*, at 104; *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984).

Under the two-prong standard articulated in *Strickland* and *Frias*, an appellant claiming ineffective assistance of counsel must demonstrate on the record that counsel's performance was deficient and that prejudice resulted. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Starr*, at 1266; *King v. State*, 810 P.2d 119, 125 (Wyo.1991) (Cardine, J., dissenting); *Campbell v. State*, 728 P.2d 628, 629 (Wyo.1986); *Frias*, 722 P.2d at 145. In other words, to warrant reversal on a claim of ineffective assistance of counsel, an appellant must demonstrate that his counsel failed to "render such assistance as would have been offered by a reasonably competent attorney" and that "counsel's deficiency prejudiced the defense of [the] case." *Lower v. State*, 786 P.2d 346, 349 (Wyo.1990). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064.

Mindful of this standard, we analyze King's various claims that his counsel's representation was deficient.

### DISCUSSION

#### A. Notice of Other Bad Acts Evidence

[¶ 9] King begins his criticism of his trial counsel's performance by asserting that his failure to obtain notice from the State regarding any W.R.E. 404(b) evidence it intended to use at trial unfairly prejudiced his ability to have a fair trial. The State replies that the fact that an attorney does not request pretrial notice of other bad acts evidence demonstrates neither that his representation was deficient nor that the defense was prejudiced.

[¶ 10] King draws our attention to three areas of testimony. We turn our attention first to the testimony from the manager of the Chief Washakie Apartments, who testified that on the night of July 13, one of the renters complained that "some guy" was chasing a girl "up the stairs and was pounding on the doors and causing a lot of havoc." King's counsel objected to the testimony as being irrelevant, which the trial court overruled. The apartment manager continued to explain that she went to the renter's apartment, and the renter gave her King's name as the person who was causing the disturbance. She further testified that before the police arrived, King drove by in a truck and yelled at the apartment manager, "What the F are you looking at? Do you want a piece of me?" She then testified that King threatened, "I'll come back and take you all out" and then, as they proceeded around the building, he "yelled out nigger to us, three times." King's attorney objected to this testimony as being extremely prejudicial, and the trial court ordered the prosecutor to "[c]ontinue on and get to the next day as quickly as possible."

[¶ 11] Later on in the proceedings, the trial court revisited this testimony. The trial court stated that it had considered King's counsel's objections as objections to Rule 404(b) evidence. The judge conducted the four-part analysis under *Vigil v. State*, 926 P.2d 351, 357 (Wyo.1996), and concluded that the testimony was indeed admissible. King does not challenge this ruling on appeal.

[¶ 12] King has failed to demonstrate that his trial counsel's representation was ineffective regarding this witness's testimony or that he was unduly prejudiced thereby. Counsel made timely objections, and the trial court analyzed the testimony under our Rule 404(b) analysis, ultimately concluding it was admissible. King does not challenge that ruling here, and we, therefore, will not analyze whether it constituted error.

[¶ 13] We next examine testimony from another one of the tenants at the Chief Washakie Apartments. She testified that, after 10 p.m. on July 14, King knocked on her door. She knew King and let him into her apartment. She testified that King was

"very intoxicated. He smelled of alcohol. He had a bottle of tequila in his pocket, in his coat." When he asked her if she wanted to drink the tequila with him, she told him she was getting ready for bed and did not want to share the tequila with him because she had quit drinking. She further testified that: "During this time, he kept trying to stick his hand up the back of my shirt. He kept patting me on my butt. Eventually, he did leave." King's attorney objected to the testimony as being irrelevant. The trial court excused the jury. The judge stated that he considered the objection to have been made on Rule 404(b) grounds and was very concerned that the evidence was not admissible under Rule 404(b). The State recommended that the evidence be stricken and the jury be instructed to disregard it. King's attorney requested a mistrial, but the trial court denied the motion because it found that the State had not intentionally elicited this testimony. When the jury returned, the judge instructed the jury the witness's testimony "concerning the Defendant trying to stick his hand up the back of her shirt and that portion of the testimony of [the witness] that 'The Defendant was patting me on the butt' is unduly prejudicial." The judge further instructed the jurors that the testimony was stricken, that they were to disregard it in its entirety, and that they should not allow it to affect their verdict in any way.

[¶ 14] The judge determined that the State's attorney did not intentionally elicit this testimony. King does not challenge this finding. Furthermore, King's attorney made a timely objection, and even though it was not made pursuant to Rule 404(b), the judge interpreted it as if it were. We discern no unfair prejudice given that the trial court struck the evidence and instructed the jury not to consider it.

[¶ 15] Finally, we shift our focus to the testimony of Sergeant Matthews. Sergeant Matthews was asked if he knew who King was when he was first dispatched to the Chief Washakie Apartments on July 15, 1998. He testified that he was familiar with King because "[w]e'd had other dealings with him, other incidents. One, the most recent one before that, [King] had been over at the ball

fields where he was called in as causing a disturbance over there and had been drinking and causing problems with some young people there." King claims this testimony was irrelevant, unduly prejudicial and unnecessary because Sergeant Matthews could have testified that he knew who King was because he had met with him earlier in the day.

[¶ 16] We conclude that this testimony borders on being inadmissible. While the State did have reason to show that Sergeant Matthews was familiar with King, the details elicited may have been objectionable. Regardless, because the case against King was strong, we do not find the testimony unduly prejudicial under the *Strickland* standard. In other words, we do not believe that the testimony "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. at 686, 104 S.Ct. at 2064. We do not find counsel's performance in this regard so deficient as to require a new trial.

**B. *Closing Argument***

[¶ 17] King contends that his attorney failed to provide adequate representation when he failed to object to a community outrage argument that the State made in its closing argument. The State replies that the State's attorney's closing remarks did not constitute a community outrage appeal.

[¶ 18] The State's attorney in her closing argument explained to the jury that the legislature wanted to provide special protection for law enforcement officers who are exposed to extra risks when acting within the course of their duties:

Every day, every day, law enforcement officers, police officers throughout this country put themselves, their own personal safety, their own lives, on the line to protect us. We here in Uinta County, Evanston, Wyoming, are no different because, every day, we have men like Rhett Groll and Doug Matthews who are willing to do the same thing. Every day, they risk their own personal safety, their own physical well-being, so that you and I can be safe. They risk their own personal safety so that

our houses and our cars are safe. And they risk it so our kids can be safe.

And because we recognize that risk, we here in Wyoming grant them special protection by making laws that say if you hurt or you try to hurt a police officer, we're going to treat it as a serious offense. It's going to be a felony. Because we want to protect those guys that are willing to take those risks, day in and day out, for us. That's what this case is about, folks.

Every day those two men go to work. They put themselves on the line. And on July 15, they were called to task. Lord knows they don't make enough money to do this. School teachers make more than they do. But they're willing to do it anyway and that's why our legislature has decided to give them that extra protection, to make it a felony if you hurt a cop. Now, the Defense would like you to minimize that and say it's something lesser. It's a misdemeanor. And maybe that's the way they do it in San Diego, but we here in Wyoming protect our cops.

[¶ 19] King insists that these comments violate the rule against making community outrage appeals and that his trial counsel would have known to object to these remarks had he educated himself on the relevant case law. King compares this case to our decision in *Gayler v. State,* 957 P.2d 855, 861 (Wyo. 1998), where we held:

> Arguments which are designed to appeal to the jury's prejudice or passion are improper. The fear in allowing such appeals is that the accused will be convicted for reasons wholly irrelevant to her guilt or innocence. "Jurors may be persuaded by such appeals to believe that, by convicting a defendant, they will assist in the solution of some pressing social problem. The amelioration of society's woes is far too

heavy a burden for the individual criminal defendant to bear."

*Id.* (citations omitted) (quoting *United States v. Monaghan,* 741 F.2d 1434, 1441 (D.C.Cir. 1984)).

[¶ 20] The State's attorney's remarks in the case at bar do not rise to the same level of impropriety as did the prosecutor's statements in *Gayler.* In *Gayler,* the prosecutor blatantly "appealed to the jury to join the government's war [against drugs] by finding Gayler guilty of delivering a controlled substance" in spite of the repeated sustained objections challenging the remarks. *Id.* at 860. In the case at bar, the State's attorney's explanation to the jury regarding why the legislature chose to provide extra protection for law enforcement officers did not attempt to appeal to the jurors' prejudices or passions by asking them to join a fight against societal ills.

**C. *Intoxication Defense***

[¶ 21] King next asserts that his trial attorney provided ineffective representation by abandoning a proper intoxication defense theory and by proffering a legally incorrect jury instruction on the intoxication defense. The State counters that the record does not contain sufficient evidence to allow a finding that King was so intoxicated that he could not formulate the requisite specific intent to cause bodily injury to the police officers.

[¶ 22] It is well established that self-induced intoxication is a defense to only specific intent crimes.[1] When the crime charged "rests in intention," a defendant is entitled to have the jury instructed that voluntary intoxication may be considered to negate the requisite specific intent. *Cox v. State,* 829 P.2d 1183, 1186 (Wyo.1992); *Stone v. State,* 745 P.2d 1344, 1351 (Wyo.1987); *Crozier v. State,* 723 P.2d 42, 51 (Wyo.1986); *Brown v. State,* 590 P.2d 1312, 1316 (Wyo.

---

1. The difference between specific and general intent crimes has been explained in this fashion: " * * * 'When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence' the fact that the defendant intended to do the proscribed act makes that crime a general criminal intent offense. 'When the definition refers to defen-

dant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent.' * * * " *People v. Love,* 111 Cal.App.3d Supp. 1, 168 Cal.Rptr. 591, 600 (1980). *Rowe v. State,* 974 P.2d 937, 939 (Wyo.1999) (quoting *Dean v. State,* 668 P.2d 639, 642 (Wyo. 1983)); *see also Cox v. State,* 829 P.2d 1183, 1185 (Wyo.1992).

1979); *Goodman v. State*, 573 P.2d 400, 406 (Wyo.1977); *Gustavenson v. State*, 10 Wyo. 300, 68 P. 1006, 1010 (1902); Wyo. Stat. Ann. § 6-1-202 (LexisNexis 2001). The statute under which King was charged provides:

§ 6-5-204. Interference with peace officer; disarming peace officer; penalties.

. . .

(b) A person who intentionally and knowingly causes or attempts to cause bodily injury to a peace officer engaged in the lawful performance of his official duties is guilty of a felony punishable by imprisonment for not more than ten (10) years.

As the State points out in its brief, this provision technically defines two separate crimes: (1) intentionally and knowingly causing bodily injury to a peace officer engaged in the lawful performance of his official duties; and (2) attempting to cause bodily injury to such a peace officer. Clearly, as the State submits, the portion of the statute that describes an attempt defines a specific intent crime because it requires the intent to bring about a specific result, in this instance, bodily injury. *Compton v. State*, 931 P.2d 936, 940 (Wyo.1997); *Cox v. State*, 829 P.2d at 1185; *Sanchez v. State*, 567 P.2d 270, 275 (Wyo.1977); *Fuller v. State*, 568 P.2d 900, 903 (Wyo.1977).

[¶ 23] With respect to the portion of this statute that prohibits anyone from intentionally and knowingly causing bodily injury to a peace officer, we agree that this defines a general intent crime. In *Rowe v. State*, 974 P.2d 937 (Wyo.1999), this court was faced with the question of whether Wyo. Stat. Ann. § 6-2-503 defined a specific intent crime. That statute, the child abuse statute, prohibits a person from "intentionally" inflicting physical or mental injury upon a child. In determining that the child abuse statute defined a general intent crime, this court wrote: "Historically this Court has equated the word 'intentionally' as synonymous with 'purposely,' 'deliberately,' 'knowingly,' 'voluntarily,' and 'consciously' in both criminal and civil cases." 974 P.2d at 940. In addition, we stated: "The child abuse statute contains no requirement that the accused intend any further act or future consequence, but merely requires that an accused inten-

tionally or recklessly inflict physical injury." 974 P.2d at 939. Based on *Rowe*, we conclude that version of the felony interference statute that prohibits anyone from intentionally and knowingly causing bodily injury to a peace officer is a general intent crime. As with the child abuse statute, this offense does not require that the accused intend a further act or future consequence. Instead, it merely required that an accused intentionally and knowingly cause bodily injury to a peace officer engaged in the lawful performance of his official duties.

[¶ 24] At this point, we believe it important, in our supervisory role, to point out what appears to be a recurring problem in prosecutions for felony interference. Just as in *Mueller v. State*, 2001 WY 134, ¶ 12, fn. 7, 36 P.3d 1151, ¶ 12, fn. 7 (Wyo.2001), King was charged using the entire language of § 6-5-204(b), without differentiating between the two versions of the offense. Moreover, the information was never amended to clarify which version of the offense was being pursued. See W.R.Cr.P. 3(e) (addressing amendment of the information). Most importantly, the jury instructions in this case do not distinguish between the two versions of the offense. By failing to specify, either through charging documents or the jury instructions, the State was faced with the more difficult task of proving both crimes at trial. As a further result, now, on appeal, the conviction must be sustained on both theories. *Bush v. State*, 908 P.2d 963, 966 (Wyo.1995) (the verdict must be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected); *Cloman v. State*, 574 P.2d 410, 412 (Wyo.1978).

[¶ 25] Had King's jury been instructed on both versions of the offense and were the record clear that the jury found King guilty of the general intent offense, there would be no need for analysis of the claim that counsel was ineffective for failing to pursue a voluntary intoxication theory to negate the specific intent offense. However, because neither the information nor the jury instructions make any differentiation between the two versions of the offense, we must analyze King's claim.

[¶ 26] Because one version of the crime defines a specific intent offense, King contends counsel should have pursued an intoxication defense. At trial, defense counsel pursued two interrelated theories of the case. First, as he argued in both opening statement and summation, defense counsel contended that the officers had not sustained any bodily injuries. Thus, defense counsel argued that, if King was guilty of anything, it was the lesser-included offense of interference with a peace officer.

[¶ 27] As for the intoxication defense, defense counsel did present an instruction on the theory of chronic use of intoxicating liquor or drugs that leads to mental illness or deficiency. However, defense counsel eventually withdrew that instruction because, in his words, "We still have the problem that it's a general intent crime and I don't have a problem with pulling it [the instruction] out."

[¶ 28] Against this backdrop, King argues that defense counsel was deficient. We do not agree. During the course of a trial, defense counsel is required to make many strategic and tactical decisions. Here, the record is clear that defense counsel was focused on the theory that King was guilty of only the lesser-included offense. With such a strategic decision, defense counsel gave up one defense in order to concentrate the jurors' focus on another. We cannot say that counsel was deficient in this respect.

[¶ 29] In addition, in an affidavit submitted by King, he admits that his attorney "counseled me against using evidence of my extreme intoxication as a defense at trial." Thus, it is clear that defense counsel made a decision to refrain from using this theory. Moreover, there is no record of any disagreement between counsel and the client. If there had been, our opinion in *Grainey v. State*, 997 P.2d 1035, 1040–41 (Wyo.2000), establishes defense counsel's obligations in this respect. There, we cited with approval the ABA Standards for Criminal Justice, Prosecution Function and Defense Function, Standard 4–5.2 (3rd ed.1993):

(a) Certain decisions relating to the conduct of the case are ultimately for the accused and others are ultimately for defense counsel. The decisions which are to be made by the accused after full consultation with counsel include:

(i) what pleas to enter;

(ii) whether to accept a plea agreement;

(iii) whether to waive jury trial;

(iv) whether to testify in his or her own behalf; and

(v) whether to appeal.

(b) Strategic and tactical decisions should be made by defense counsel after consultation with the client where feasible and appropriate. Such decisions include what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and what evidence should be introduced.

(c) If a disagreement on significant matters of tactics or strategy arises between defense counsel and the client, defense counsel should make a record of the circumstances, counsel's advice and reasons, and the conclusion reached. The record should be made in a manner which protects the confidentiality of the lawyer-client relationship.

### D. *Lesser–Included Offense Instruction*

[¶ 30] King next contends that his counsel provided ineffective assistance by failing to familiarize himself with Wyoming criminal law regarding what constitutes a lesser-included offense. The State replies that, because King was benefited by a jury instruction on a lesser offense to which he was not entitled, he could not have been prejudiced by its submission to the jury.

[¶ 31] During the instructions conference phase of the trial, King's counsel requested the trial court to instruct the jury on the lesser offense of resisting arrest, a misdemeanor under Wyo. Stat. Ann. § 6–5–204(a) (LexisNexis 2001). After much debate, the trial judge decided that, although resisting arrest was not a lesser-included offense, the instruction should nevertheless be given as it was the defense's theory of the case. After much debate on the issue, the trial court decided to give the instruction as a lesser-included offense instruction after King

agreed to waive his right to bring a plain error challenge to the instruction on appeal.

[¶ 32] King claims that this strategy of asking the jury to convict him of the misdemeanor interference charge unfairly prejudiced him because he was forced to admit to some type of misconduct. We disagree. Substantial evidence existed to demonstrate King's actions were unlawful; it was really just a matter of to what degree. Although the jurors ultimately rejected the idea that King's actions fell into the misdemeanor interference category, this instruction gave them the opportunity to convict King of the lesser crime. As for the contention that counsel was ineffective in obtaining a legally improper lesser-included offense instruction, we recently held in *Mueller v. State*, 2001 WY 134, ¶ 14, 36 P.3d 1151, that misdemeanor interference is a lesser-included offense of the felony charge. Thus, counsel's request for a lesser-included offense instruction was not improper in any respect.

### E.  *Cumulative Error*

[¶ 33] King finally contends that these errors taken separately or together prejudiced his case enough to create a reasonable probability that he would have enjoyed a more favorable verdict had it not been for these errors. We have analyzed each of King's complaints about his attorney's performance in detail and do not find his counsel's representation to be outside the wide range of professionally competent assistance. As always, the benefit of hindsight provides reason to believe that perhaps some trial decisions did not work out as well as hoped, but King has failed to convince us that any of those decisions, considered without the benefit of hindsight, constituted ineffective representation or that the verdict would have been more favorable to him had the trial gone as he now contends it should have. We do not find cumulative error.

[¶ 34]  Affirmed.