2010 WY 42

**Fulgencio ERES, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. S–08–0251.**

Supreme Court of Wyoming.

April 8, 2010.

Representing Appellant: Diane Lozano, State Public Defender; Tina Kerin, Appellate Counsel; Eric M. Alden, Senior Assistant Public Defender, Wyoming Public Defender Program. Argument by Mr. Alden.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Eric Johnson, Faculty Director, Eric K. Thompson, Student Director, and Ryan W. Podlesnik, Student Intern, of the Prosecution Assistance Program. Argument by Mr. Podlesnik.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1] Appellant Fulgencio Eres appeals his felony conviction for receiving stolen property, asserting claims of instructional error and evidentiary insufficiency. We will affirm.

## ISSUES

[¶ 2] Eres presents these issues for our review:

I. Did the trial court err in instructing the jury on the appropriate point in time for valuation of the stolen property?

II. Did the State present sufficient evidence to support a felony level value of stolen property?

## BACKGROUND FACTS

[¶ 3] The basic facts in this case are straightforward. On November 23, 2007, Darren Gonzales discovered his home had been broken into and several items had been stolen. Among the items taken were home theater components, various televisions, DVD players, VCRs, headphones, and a Sony PlayStation 2. Gonzales reported the break-in and theft to the Cheyenne Police Department. A few days later, Gonzales received information relating to the stolen items and conveyed it to the investigating officers.

[¶ 4] Based on the information received, Detective Thomas Hood and Detective James Eddy contacted Eres at his residence on November 29. While there, they discovered several items reportedly stolen from the Gonzales residence. Eres admitted to the detectives that he knew the property in question had been stolen. Eres further stated he bought the stolen property for about $200.00 and planned on selling it for a profit. The detectives seized the stolen property and transported it to the Cheyenne Police Department.

[¶ 5] The State subsequently charged Eres with one count of receiving stolen property valued in excess of $1,000.00 as proscribed by Wyo. Stat. Ann. § 6–3–403(a)(i) (LexisNexis 2009),[1] a felony. At trial, the only contested issue concerned the fair market value of the stolen property and, thus,

the level of Eres' criminal culpability. The district court instructed the jury on the elements of both the charged felony offense and the lesser included misdemeanor offense of receiving stolen property with a value of less than $1,000.00. The jury found the value of the property exceeded $1,000.00 and convicted Eres on the felony offense. The district court sentenced Eres to a term of imprisonment of six to eight years. This appeal followed.

## DISCUSSION

### Jury Instruction

[¶ 6] At the instruction conference, Eres objected to the district court's proposed instruction concerning the time period to be used for determining the value of the stolen property under § 6–3–403(a). Eres contended that the appropriate point of valuation should be the date the criminal act of receiving occurred, and he offered an instruction to that effect. The district court rejected Eres' proposed instruction and instructed the jury that "[t]he value of the property alleged to have been stolen and unlawfully received is the market value of the property taken, at the time and place the property was stolen."

[¶ 7] On appeal, Eres and the State dispute whether the district court erred in instructing the jury to determine the value of the stolen property at the time of its original theft. Sections 6–3–403(a)(i) and (iii) are ambiguous in the sense that they refer merely to "the value of the property" and do not identify the specific point in time that the value of property should be determined. Thus, as noted by the parties, the statute is susceptible to more than one meaning. This Court has not previously determined the meaning of "the value of the property" in the context of one charged with receiving stolen property. However, there is no need to de-

---

1. § 6–3–403(a) provides:

    (a) A person who buys, receives, conceals or disposes of property which he knows, believes or has reasonable cause to believe was obtained in violation of law is guilty of:
    (i) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00),

or both, if the value of the property is one thousand dollars ($1,000.00) or more; or
    * * * *
    (iii) A misdemeanor punishable by imprisonment for not more than six (6) months, a fine of not more than seven hundred fifty dollars ($750.00), or both, if the value of the property is less than one thousand dollars ($1,000.00).

cide this case of first impression on the matter because the timing of valuation—that is, the property's value on the date of receipt as compared to the date of theft—was not an issue at trial.

[¶ 8] The record discloses that both the State and Eres proceeded at trial on the theory that no distinction existed in the property's value as between the date the property was stolen and the date Eres received it. No contention was made that the property's value varied between the date of theft and the date of receipt. Nor was there any attempt, through the introduction of evidence or otherwise, to differentiate the property's value among the criminal events. The parties basically presented two competing property valuations that did not distinguish, in any manner, the property's worth as between the time of the theft and the time of the receipt. Simply put, the parties did not provide any basis upon which the jury could rationally assess the property's value at the time Eres received it as compared to when it was stolen. Thus, the timing of the valuation of the stolen property is not an issue under the facts of this case. Eres' counsel even admitted as much at the instruction conference: "We're not really saying that the value was diminished in the time that someone else had it to the time Mr. Eres [received] it."

[¶ 9] In any event, even assuming the district court misstated the law governing the valuation element, we are unable to conclude that the error mandates reversal of Eres' conviction. In *Granzer v. State*, 2008 WY 118, ¶ 18, 193 P.3d 266, 271–72 (Wyo. 2008), we recognized that a trial court's failure to properly instruct on an element of a crime is not a fundamental error requiring automatic reversal but, rather, is a trial-type error. If a proper objection is made at trial, as in this case, an instructional error is evaluated in accordance with the harmless constitutional error standard described in *Chapman v. California*, 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967). *Granzer*, ¶ 16, 193 P.3d at 271. Under that standard, an error will not result in reversal if we are convinced the error was harmless beyond a reasonable doubt. *Id.* Because of the lack of evidence of competing valuations,

we are convinced there is no possibility that the jury verdict would have been different under the instruction requested by Eres.

### Sufficiency of the Evidence

[¶ 10] Eres challenges the sufficiency of the evidence supporting his conviction. The benchmark for reviewing a sufficiency of the evidence claim is whether the evidence and any reasonable inferences drawn from it, when viewed in the light most favorable to the State, are adequate to permit a reasonable trier of fact to find guilt beyond a reasonable doubt. *Granzer*, ¶ 23, 193 P.3d at 273; *Statezny v. State*, 2001 WY 22, ¶ 15, 18 P.3d 641, 645 (Wyo.2001). We have consistently held that it is the jury's responsibility to resolve conflicts in the testimony, weigh the evidence and draw reasonable inferences from the facts. *Sotolongo–Garcia v. State*, 2002 WY 185, ¶ 11, 60 P.3d 687, 689 (Wyo.2002). We will not substitute our judgment for that of the jury but will only determine whether a quorum of reasonable and rational individuals would, or even could, have found the essential elements of the crime were proven beyond a reasonable doubt. *Conine v. State*, 2008 WY 146, ¶ 5, 197 P.3d 156, 159 (Wyo.2008); *Grissom v. State*, 2005 WY 132, ¶ 24, 121 P.3d 127, 136 (Wyo.2005).

[¶ 11] Eres was charged with felony receipt of stolen property under § 6–3–403(a)(i). Under that statute as set forth in the jury instructions, the State was required to prove beyond a reasonable doubt that Eres received stolen property with a value in excess of $1,000.00. The district court instructed the jury, as noted above, that "value" meant "the market value of the property ... at the time and the place the property was stolen." The district court further defined "market value" as "the price a willing buyer would pay, and which a willing seller would accept." In attacking his conviction, Eres claims the trial evidence was insufficient to establish the stolen property in question had a market value in excess of $1,000.00. We disagree.

[¶ 12] Initially, we note that Eres' insufficiency claim is premised, in part, on his contention that the State was required to

establish the property's value at the time he received it. As already discussed, the value of the stolen property as between the date of theft and the date of receipt was not an issue at trial. Consequently, we need only determine whether the trial evidence was sufficient to support the jury's conclusion that the stolen property, as instructed by the district court, was worth $1,000.00 or more during the time in question.

[¶ 13] At trial, Gonzales, the owner of the property, gave specific opinions, accompanied by photographs, regarding the market value of many of the stolen items. For example, Gonzales testified that the Sony stereo receiver depicted in Exhibit 1, which he had purchased seven months before the burglary for $1,450.00, was worth "half the purchase price," *i.e.*, $725.00. He also testified about the market value of the Sony PlayStation, a graphic equalizer, stereo speakers, various DVD players, and a television, whose combined market value was $665.00. The values Gonzales expressed on these items were based on his knowledge of the amount he had paid for them, as well as his knowledge of the market. Altogether, Gonzales' testimony established a combined market value of $1,390.00 for certain stolen items, well in excess of the $1,000.00 threshold for the charged felony offense.

[¶ 14] Eres does not contend that Gonzales' testimony was not competent evidence of the property's market value. As the owner of the property, Gonzales is presumed to have special knowledge of the property's value and is qualified to express an opinion about it. *Weathers v. State,* 652 P.2d 970, 973 (Wyo.1982). The weight to be given his testimony was for the jury to decide. *Id.*

[¶ 15] In addition, Gonzales provided specific testimony about the purchase price of several stolen items and the dates he had purchased them. The district court instructed the jury that it could consider the purchase price in assessing the market value of the property. The district court also instructed the jury to consider the evidence "in the light of your experience and knowledge of human affairs." In accord with the district court's instructions and using its experience and knowledge of human affairs, the jury could have drawn reasonable inferences from each item's purchase date and price in deciding the market value of the stolen property. *See* 50 Am.Jur.2d *Larceny* § 140 (2006); *see also Hebron v. United States,* 837 A.2d 910, 914 (D.C.2003) (holding that a jury may draw reasonable inferences from an item's purchase date and price when determining whether the government has met its burden of proving value under the theft statute); *State v. Holmes,* 830 S.W.2d 460, 462 (Mo.App. E.D.1992) (jury may consider purchase price and age in determining value).

[¶ 16] Viewing the evidence as a whole, and affording the State all favorable inferences which may be fairly and reasonably drawn from it, we have no trouble concluding the evidence was sufficient for a reasonable jury to find beyond a reasonable doubt that the value of the stolen property exceeded $1,000.00. Although Eres presented contrary evidence indicating a lesser market value for the property, it was the jury's responsibility to evaluate that evidence and assign it the weight it deemed appropriate in determining Eres' guilt or innocence on the charged crime. The jury apparently found the State's evidence more compelling. We will not second guess the jury's determination. In sum, we find ample evidence to sustain Eres' conviction. Affirmed.