2010 WY 108

**Andrew Eli GOMEZ, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–09–0162.

Supreme Court of Wyoming.

Aug. 3, 2010.

Representing Appellant: Diane Lozano, State Public Defender; and Tina N. Kerin, Appellate Counsel, Wyoming Public Defender Program. Argument by Ms. Kerin.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Graham M. Smith, Assistant Attorney General. Argument by Mr. Smith.

Before KITE, C.J., and GOLDEN, HILL, VOIGT *, and BURKE, JJ.

HILL, Justice.

[¶1] Appellant, Andrew Eli Gomez (Gomez), challenges the district court's decision to deny his motion to transfer the criminal matters that underlie this appeal to the juvenile court. Gomez was convicted of felony interference with a police officer (intentionally and knowingly caused bodily harm) in violation of Wyo. Stat. Ann. § 6–5–204(b), as well as three misdemeanors; youthful driver with detectable alcohol, reckless driving, and failure to stop vehicle where accident involved death or personal injuries. Gomez was convicted of all the charged crimes. He was sentenced to six to ten years of incarceration for his felony conviction, with a recommendation for placement in the Youthful Offender Program (Boot Camp). Additional concurrent sentences were imposed for the misdemeanor convictions.

[¶2] In addition, Gomez challenges the constitutionality of the statute which establishes the jurisdiction of the juvenile court; claims the evidence was insufficient to sustain the conviction for felony interference

* Chief Justice at time of oral argument.

with a police officer (no evidence of specific intent); asserts that the district court abused its discretion in disallowing evidence from Gomez's expert witness (this issue includes a contention that the ruling violated Gomez's right to compulsory process); and, that the district court failed to instruct the jury as to the effect of Gomez's intoxication at the time the crime was committed. We will affirm.

## ISSUES

[¶3] Gomez raises these issues:

I. W.S. § 14–6–203 is unconstitutional.

II. Alternatively to Issue I, the trial court abused its discretion when it failed to grant [Gomez's] motion to transfer his felony case to Juvenile Court.

III. There was insufficient evidence of specific intent to sustain [Gomez's] felony conviction for interference—attempting to cause bodily injury.

IV. The trial court erred in refusing to answer a question about the "ultimate issue" in the case. Also, this ruling violated [Gomez's] Sixth Amendment right to compulsory process.

V. The trial court erred in failing to give an instruction to the effect of [Gomez's] intoxication [at the time the crime was committed].

The State rephrases the issues:

I. Does Wyo. Stat. Ann. § 14–6–203 violate due process by enhancing a person's sentence without a jury finding?

II. Did the trial court abuse its discretion when it failed to grant [Gomez's] motion to transfer his felony case to Juvenile Court?

III. Was [Gomez] charged with and found guilty of <u>attempting</u> to cause bodily injury to a peace officer or was he charged with and found guilty of <u>causing</u> bodily injury to a peace officer? [Underscoring added.]

IV. Did the trial court err in refusing to allow [Gomez's] expert witness to an-

swer a question about the "ultimate issue" in this case?

V. Was a voluntary intoxication instruction warranted, considering [Gomez] was charged with a general intent crime?

## FACTS AND PROCEEDINGS

[¶ 4] On October 15, 2008, Gomez was charged with the crimes set out heretofore, in the district court. All of the crimes for which Gomez was convicted occurred around 9:30 p.m. on October 10, 2008. A 911 call directed the attention of multiple law enforcement officers to an apartment building in Rawlins to investigate a fight in progress. Gomez was at the scene of that fight and he was fleeing as the police arrived. Police Officer Chris Gulbrandson arrived at the scene to further investigate and he parked his car so as to block an exit. The headlights of Gulbrandson's patrol car were on and the car had reflective stripes and an LED light bar, but he had not activated the vehicle's overhead lights. When he got out of his car onto the roadway, Gomez ran into him with his pickup, "sandwiching" Gulbrandson between his patrol car and Gomez's pickup. Officer Gulbrandson recognized the vehicle as belonging to Gomez and he could clearly see him through the driver's side window as he was hit. Gulbrandson was seriously injured by this occurrence. Gomez fled the scene of the incident and was later found hiding in his bedroom at home. Police officers arrested him there and he resisted their efforts to make that arrest. Once in jail, Gomez was given a sobriety test which showed a BAC of .13.

[¶ 5] On January 6, 2009, Gomez filed a motion to transfer the proceedings in his case to the juvenile court. By order entered on January 29, 2009, the district court denied that motion. As necessary, additional facts and circumstances will be provided in our discussion of the issues raised.

## DISCUSSION

### Constitutionality of Juvenile Court Statutes

[¶ 6] The essence of Gomez's constitutional issue is that the governing statute,

Wyo. Stat. Ann. § 14–6–203 (LexisNexis 2009),

> ... places into the hands of the prosecuting attorney, and upon motion such as this, the trial court, the decision of whether to place Mr. Gomez, a juvenile, in juvenile court, with the attendant consequences, or to place Mr. Gomez in district court, where he was made a felon and faced greatly enhanced penalties, including imprisonment, which he then received. This statute, on its face, violates *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

Gomez concedes that this issue was not raised in the district court and asserts that, therefore, this Court should consider this error under a plain error analysis. In such instances we apply this standard of review:

> We review constitutional questions *de novo*. *Rabuck v. State*, 2006 WY 25, ¶ 13, 129 P.3d 861, 864 (Wyo.2006); *Giles v. State*, 2004 WY 101, ¶ 10, 96 P.3d 1027, 1030 (Wyo.2004). Because Stokes did not raise the issue of the constitutionality of Wyo. Stat. Ann. § 14–3–105 in the district court, our review of Stokes' claim is confined to a search for plain error. Plain error exists when: (1) the record is clear as to the incident alleged as error; (2) the error transgressed a clear and unequivocal rule of law; and (3) the error adversely affected a substantial right of the accused which materially prejudiced him. *Moe v. State*, 2005 WY 58, ¶ 7, 110 P.3d 1206, 1210 (Wyo.2005); *Pierson v. State*, 956 P.2d 1119, 1123 (Wyo.1998).

*Stokes v. State*, 2006 WY 134, ¶ 6, 144 P.3d 421, 423 (Wyo.2006).

[¶ 7] In 1 Michael J. Dale, et al., *Representing the Child Client* ¶ 5.03[13][k] (Application of *Apprendi* Doctrine to Juvenile Delinquency Cases) (2008) the authors note:

> The United States Supreme Court held in *Apprendi v. New Jersey* [530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) ] that any facts other than prior convictions, which increase the penalty for a crime beyond the statutory limit, must be submitted to a jury and then proved beyond a

reasonable doubt. The ruling struck down a New Jersey law authorizing an increase to the maximum sentence for a crime if the trial judge found by a preponderance of the evidence that the defendant had committed the crime "to intimidate an individual because of race, color, gender, handicap, religion, sexual orientation, or ethnicity." The Supreme Court found the statute violated the defendant's Sixth and Fourteenth Amendment rights to due process and trial by jury.

Although *Apprendi* involved an adult defendant, a growing body of case law involves the application of the *Apprendi* doctrine in the juvenile delinquency context. One example is the transfer of juveniles to adult court for prosecution. It has been argued that juvenile court procedures used to prosecute children as adults violate *Apprendi* because adult prosecution results in an increased sentence based upon facts not submitted to a jury or proved beyond a reasonable doubt. A violation of *Apprendi* also may arise under an "extended jurisdiction juvenile prosecution (EJJ)." In EJJ cases in Illinois, if prosecution of a child results in a guilty plea, a finding of guilt, or a verdict of guilt, the court will impose one or more juvenile sentences and an adult criminal sentence which will be stayed on the condition that the child not violate the provisions of the juvenile sentence or commit a new crime. A third situation where an *Apprendi* violation may occur is in jurisdictions with "youthful offender" statutes authorizing judges to increase the punishment for juveniles convicted of certain offenses beyond the statutory maximum otherwise permitted for juveniles, if certain conditions are met.

Courts have generally been reluctant to apply *Apprendi* in juvenile delinquency settings not specifically involving questions of the child's guilt or innocence. Proceedings determining which system is appropriate for a juvenile offender are considered outside of the scope of *Apprendi* [*citing In re J.W.*, 346 Ill.App.3d 1, 281 Ill.Dec. 799, 804 N.E.2d 1094, 1102 (2004).]

[¶ 8] In the case *In re J.W.*, an Illinois appellate court ruled that an EJJ case does not implicate the rule articulated in *Apprendi*. *J.W.*, 281 Ill.Dec. 799, 804 N.E.2d at 1101–03 (citing other similar Illinois cases). In *State v. H.O.*, 119 Wash.App. 549, 81 P.3d 883, 885–86 (2003) a Washington appellate court rejected a contention that *Apprendi* and its progeny mandate a "beyond a reasonable doubt" standard to decline juvenile jurisdiction. In *State v. Mays*, 277 Kan. 359, 85 P.3d 1208, 1216 (2004), the Kansas Supreme Court held that the Kansas procedure for authorizing adult prosecution, which is similar to Wyoming's, falls outside the dictates of *Apprendi*. In *Caldwell v. Commonwealth*, 133 S.W.3d 445, 453 (Ky.2004), the Supreme Court of Kentucky adopted the same rule as did Kansas.

[¶ 9] A different result was reached in *State v. Rudy B.*, 147 N.M. 45, 216 P.3d 810, 812–25 (2009), where, in a lengthy decision, the Court of Appeals of New Mexico discussed its "unusual" system of handling juvenile cases. *Id.* at 815. The opinion in that case resulted in a significant change in how New Mexico viewed its juvenile court proceedings in light of *Apprendi* and its progeny. The appellate court determined that New Mexico's existing procedures were unconstitutional and further determined that its decision was a "new rule" that would apply only to new cases and those that are on direct review where the *Apprendi* issue has been preserved for appeal. *Id.* at 824–25. Also see *Commonwealth v. Quincy Q.*, 434 Mass. 859, 753 N.E.2d 781, 788–90 (2001) wherein the Massachusetts appellate court adopted the *Apprendi* rule to the extent that any increase in penalty for youthful offenders must be proved beyond a reasonable doubt.

[¶ 10] Applying the plain error rule, we conclude that the error asserted was not considered in the district court and is not reflected at all by the record on appeal. Furthermore, it does not transgress a clear and unequivocal rule of law. Therefore we decline to further consider the issue in this case.

**Refusal of Motion to Transfer to Juvenile Court an Abuse of Discretion**

[¶ 11] The district court's decision not to transfer Gomez's case to juvenile

court, from the district court, is reviewed under the abuse of discretion standard.

> Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; and it means a sound judgment exercised with regard to what is right under the circumstances, and without doing so arbitrarily or capriciously.

*Vaughn v. State*, 962 P.2d 149, 151 (Wyo. 1998).

[¶ 12]   On January 29, 2009, the district court held a hearing so as to consider the merits of Gomez's motion to transfer his case to the juvenile court.   We note at the outset that the county prosecutor or district attorney has the responsibility for making an initial determination whether or not to charge a juvenile with a felony, in either the district court or the juvenile court.   Wyo. Stat. Ann § 14–6–203(f) (LexisNexis 2009); and see generally, *Hansen v. State*, 904 P.2d 811 (Wyo.1995).

[¶ 13]   Gomez was 17 years old at the time he committed the crime at issue here.   Section 14–6–203(f)(iii) provides that in cases where the juvenile has attained the age of 17, the prosecuting attorney must consider the factors set out in Wyo. Stat. Ann. § 14–6–237(b)(i) through (vii) (LexisNexis 2009), in making the decision whether to prosecute a juvenile in district court or juvenile court. Those factors are:

> (i) The seriousness of the alleged offense to the community and whether the protection of the community required waiver;
>
> (ii) Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner;
>
> (iii) Whether the alleged offense was against persons or against property, greater weight being given to offenses against persons especially if personal injury resulted;
>
> (iv) The desirability of trial and disposition of the entire offense in one (1) court when the juvenile's associates in the alleged offense are adults who will be charged with a crime;
>
> (v) The sophistication and maturity of the juvenile as determined by consider-

ation of his home, environmental situation, emotional attitude and pattern of living;

> (vi) The record and previous history of the juvenile, including previous contacts with the law enforcement agencies, juvenile courts and other jurisdictions, prior periods of probation to this court, or prior commitments to juvenile institutions;
>
> (vii) The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile (if he is found to have committed the alleged offense) by the use of procedures, services and facilities currently available to the juvenile court.

[¶ 14]   Those factors are also used by the district court in a transfer hearing as a part of its discretionary decision-making process. Wyo. Stat. Ann. § 14–6–237(a) and (b) (LexisNexis 2009).   At the transfer hearing in this matter, Gomez presented evidence from his stepfather, Marvin Brown, that in October of 2005, at age 15, Gomez was given a ticket and fined for "breach of peace—fighting," but he was not given any counseling. In June of 2006, Gomez received a driver's license violation just before he was 15 and was given a ticket and fined, but again received no counseling.   Mr. Brown testified that he and Gomez's mother were concerned about the path Gomez was taking, but conceded that counseling assistance was not sought because they could not afford it.   Mr. Brown's testimony continued that in July of 2006, Gomez was ticketed for failure to report an accident and a driver's license violation.   Once again, Gomez received no counseling.   In February of 2007, Gomez again was ticketed for driving under 15 years of age, but no counseling was sought or given him.   In May of 2007, Gomez was ticketed and fined for imprudent driving and a restricted driver's license violation, and again did not receive counseling.   Next, Gomez was ticketed in August of 2007, for another driver's license offense, as well as breach of peace—fighting.   Still, Gomez received no treatment or counseling.

[¶ 15]   In December of 2007, Gomez was arrested for youthful driving under the influence of alcohol.   For that offense, Gomez was placed on probation and he began counseling

with Ada Fowler. In this same time frame, Gomez was ticketed for speeding. In February of 2008, Gomez was again ticketed for breach of peace—fighting and his probation was revoked. In March of 2008, Gomez was ticketed for minor in possession of alcohol, and he continued his counseling with Ada Fowler. The central concern expressed by Gomez's counselor, as well as his parents, was that Gomez had a drinking problem. That problem was addressed in part by Gomez going to Laramie for further counseling. His parents' efforts to rein in his bad conduct are the subject of extensive testimony. In response to cross-examination by Gomez's attorney, Mr. Brown indicated that he wished the courts, probation personnel, and school personnel had provided better services for Gomez early on in the course of his unlawful behavior patterns. The failure of the "system" to provide Gomez with counseling and rehabilitative services serves as one of the primary bases for his contention that he should have been prosecuted in juvenile court, rather than the district court.

[¶ 16] Ada Fowler, a juvenile probation agent in Carbon County, also testified about Gomez's conduct. At the heart of Gomez's legal difficulties was his alcohol problem. It was Agent Fowler's opinion that Gomez needed inpatient treatment.

[¶ 17] At the close of the hearing, the district court made an oral ruling on the motion to transfer Gomez's case to juvenile court:

> We are all in agreement that Mr. Gomez bears the burden of proof since he is the party seeking relief and has filed the motion to transfer to juvenile court. We are also in agreement that there are seven determining factors set out in 14–6–237(b). The first of those factors is the seriousness of the alleged offense to the community. This is extremely serious, a violent attack upon a uniformed police officer.
>
> Second, was the alleged offense committed in an aggressive, violent, premeditated or willful manner? The facts as alleged by the State, are all of those: aggressive, violent, premeditated and willful.
>
> Whether the alleged offense was against persons or property, this was a violent attack on a uniformed police officer.
>
> Number 4 does not seem to be applicable to this case. The desirability of trial or disposition in one court. There is only one defendant in one incident.
>
> Number 5, the sophistication or the maturity of the juvenile, his home, his environmental situation, emotional attitude and pattern of living seems to tie in with Number 6, the record and previous history of the juvenile, previous contacts with law enforcement, juvenile courts, periods of probation. This young man has a long and detailed criminal history.
>
> [Defense counsel] has brought that criminal history before the Court, and it cuts both ways. This young man has shown—in spite of all the attempts to provide him help from his mother, his stepfather, from Ms. Fowler, has shown a pattern of breaking the law.
>
> Finally, Number 7, prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile. This Court takes seriously protecting the public from violent young criminals. And the reasonable likelihood of rehabilitation of the juvenile is just as likely in felony adult court as it is in juvenile court.
>
> Finally, this defendant will turn 18 [very soon] and is set for trial on the 28th. He will be a full-fledged adult when this case goes to trial. He was almost an adult when the alleged offense occurred.
>
> Those are the factors considered by the Court. That is the reasoning of the Court, and the Court denies the motion to transfer to juvenile court.

[¶ 18] We have carefully examined the materials in the record on appeal that bear on this issue, and we conclude that the district court did not abuse its discretion in denying the motion to transfer this case from the district court to the juvenile court.

### Sufficiency of the Evidence—Attempt to Cause Bodily Harm

■ [¶ 19] The benchmark for reviewing a sufficiency of the evidence claim is whether

the evidence, when viewed in the light most favorable to the State, is adequate to permit a reasonable trier of fact to find guilt beyond a reasonable doubt. We will not substitute our judgment for that of the jury. Instead, we will determine whether a quorum of reasonable and rational individuals would, or even could, have found that the essential elements of the crime were proven beyond a reasonable doubt. *Pryor v. State*, 2009 WY 95, ¶ 7, 212 P.3d 635, 637 (Wyo.2009).

[¶ 20] In this appeal, Gomez was convicted of a violation of Wyo. Stat. Ann. § 6–5–204(b) (LexisNexis 2009), which provides:

(b) A person who intentionally and knowingly causes or attempts to cause bodily injury to a peace officer engaged in the lawful performance of his official duties is guilty of a felony punishable by imprisonment for not more than ten (10) years.

It was very clear from the outset that the State was prosecuting Gomez for "intentionally and knowingly" causing bodily injury to a peace officer, and not "attempting" to do so.

[¶ 21] Gomez contends that there was insufficient time between Officer Gulbrandson's getting out of his car, and Gomez then running into him only a few seconds later, for Gomez to have formed the specific intent to "attempt to cause" bodily harm to Gulbrandson. Gomez bases this contention on a video clip shown the jury, and contends that it outweighs Gulbrandson's testimony that he could clearly see Gomez's face, through the driver's side window of his vehicle, as he sped toward Gulbrandson.

[¶ 22] We have examined this asserted error very carefully, and we are persuaded that Gomez's argument in this regard is not supported by the record on appeal. The instruction given the jury was this:

### Instruction No. 5

The elements of the crime of *Interference with a Peace Officer—Attempt to Cause Bodily Injury,* as charged in Count I in this case, are:

1. On or about the 10th day of October 2008:
2. In Carbon County, Wyoming;
3. The Defendant, Andrew Gomez;

4. Intentionally and knowingly caused bodily injury to a peace officer;
5. While that peace officer was engaged in the lawful performance of his official duties.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the Defendant guilty. If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the Defendant not guilty. [Underscoring added.]

[¶ 23] Gomez contends that there is a fatal flaw in the instruction that requires reversal. The caption of the instruction contains the word "attempt," although the elements portion of the instruction—the material portion of it—does not include the word "attempt." Gomez contends that this made the crime at issue a "specific intent" crime, and the evidence failed to prove that Gomez's "specific intent" was to cause bodily harm to Officer Gulbrandson. Although not addressed by the briefs, we are duty bound to take note that the verdict form looked like this:

### JURY VERDICT

### COUNT ONE

1. We, the jury, duly empanelled and sworn to try the above-entitled cause, do find that, as to the crime of *Interference with a Peace Officer—Attempt to Cause Bodily Injury,* as charged in Count I of the Information, the Defendant, Andrew Gomez, is:

    ——  Not Guilty

    <u>X</u>  Guilty

[Underscoring added.]

[¶ 24] Nonetheless, we reject Gomez's contentions in this regard for several reasons. Gomez made no objection to this instruction at trial; indeed, it was given pretty much as offered by him. Likewise the record shows no objection to the form of the verdict. We have held as follows in this regard:

[I]n *Leyva* [*v. State* ], 2005 WY 22, ¶ 9, 106 P.3d [873] at 876, we held that, where a defendant fails to object to an instruction, our review is for plain error, which, of course, involves a search for prejudice. Even where a defendant has not only not objected, but has actually offered the offending instruction, the invited error doctrine allows for review where the instruction is "necessarily prejudicial." *Bromley v. State,* 2007 WY 20, ¶ 35, 150 P.3d 1202, 1213 (Wyo.2007). These cases reflect the confluence of W.R.Cr.P. 30(a), which states in part that "[n]o party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury is instructed, stating distinctly the matter to which the party objects and the grounds of the objection[,]" and W.R.Cr.P. 52(b), which states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." We have followed this rule for a long time. See, e.g., *Justice v. State,* 775 P.2d 1002, 1009 (Wyo.1989); *Cutbirth v. State,* 663 P.2d 888, 891 (Wyo.1983); and *Britton v. State,* 643 P.2d 935, 937 (Wyo. 1982).

*Snow v. State,* 2009 WY 117, ¶ 26, 216 P.3d 505, 513–14 (Wyo.2009).

[¶ 25]   In addition, we have long held:

Jury instructions should inform the jurors concerning the applicable law so that they can apply that law to their findings with respect to the material facts, instructions should be written with the particular facts and legal theories of each case in mind and often differ from case to case since any one of several instructional options may be legally correct, a failure to give an instruction on an essential element of a criminal offense is fundamental error, as is a confusing or misleading instruction, and the test of whether a jury has been properly instructed on the necessary elements of a crime is whether the instructions leave no doubt as to the circumstances under which the crime can be found to have been committed.

*Montez v. State,* 2009 WY 17, ¶ 21, 201 P.3d 434, 441 (Wyo.2009).

[¶ 26]   We have also held:

On appeal, Eres and the State dispute whether the district court erred in instructing the jury to determine the value of the stolen property at the time of its original theft. Sections 6–3–403(a)(i) and (iii) are ambiguous in the sense that they refer merely to "the value of the property" and do not identify the specific point in time that the value of property should be determined. Thus, as noted by the parties, the statute is susceptible to more than one meaning. This Court has not previously determined the meaning of "the value of the property" in the context of one charged with receiving stolen property. However, there is no need to decide this case of first impression on the matter because the timing of valuation-that is, the property's value on the date of receipt as compared to the date of theft-was not an issue at trial.

The record discloses that both the State and Eres proceeded at trial on the theory that no distinction existed in the property's value as between the date the property was stolen and the date Eres received it. No contention was made that the property's value varied between the date of theft and the date of receipt. Nor was there any attempt, through the introduction of evidence or otherwise, to differentiate the property's value among the criminal events. The parties basically presented two competing property valuations that did not distinguish, in any manner, the property's worth as between the time of the theft and the time of the receipt. Simply put, the parties did not provide any basis upon which the jury could rationally assess the property's value at the time Eres received it as compared to when it was stolen. Thus, the timing of the valuation of the stolen property is not an issue under the facts of this case. Eres' counsel even admitted as much at the instruction conference: "We're not really saying that the value was diminished in the time that someone else had it to the time Mr. Eres [received] it."

In any event, even assuming the district court misstated the law governing the valuation element, we are unable to conclude that the error mandates reversal of Eres' conviction. In *Granzer v. State*, 2008 WY 118, ¶ 18, 193 P.3d 266, 271–72 (Wyo.2008), we recognized that a trial court's failure to properly instruct on an element of a crime is not a fundamental error requiring automatic reversal but, rather, is a trial-type error. If a proper objection is made at trial, as in this case, an instructional error is evaluated in accordance with the harmless constitutional error standard described in *Chapman v. California*, 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967). *Granzer*, ¶ 16, 193 P.3d at 271. Under that standard, an error will not result in reversal if we are convinced the error was harmless beyond a reasonable doubt. *Id.* Because of the lack of evidence of competing valuations, we are convinced there is no possibility that the jury verdict would have been different under the instruction requested by Eres.

*Eres v. State*, 2010 WY 42, ¶¶ 7–9, 227 P.3d 854, 855 (Wyo.2010).

[¶ 27] We deem the variance between the caption of the instruction and the body of the instruction to be, at most, an error that is harmless beyond a reasonable doubt under the circumstances of this case. The specific enumeration of the elements in the body of the instruction fully informed the jury of the evidence the State was required to produce in order to justify a conviction. Our conclusion in this regard is bolstered by Officer Gulbrandson's direct and very clear testimony that he recognized Gomez's pickup and was able to view his face through the driver's side window as Gomez was driving the vehicle directly at him. Gomez did not offer this defense before the jury during his trial. Rather, he defended on the basis that he accidentally hit Gulbrandson because he could not see him, as his view was obstructed by trees, darkness, and the inclement weather.

**The Trial Court's Limitation of Expert Witness Testimony**

[¶ 28] Gomez called an accident reconstruction expert to testify on his behalf.

Gomez contends that in sustaining some objections to that testimony, made by the prosecutor, as well as one made by the district court itself, the district court abused its discretion with regard to the admission or exclusion of evidence. A district court's decision to admit or exclude evidence is reviewed for abuse of discretion, *Smith v. State*, 2009 WY 2, ¶ 35, 199 P.3d 1052, 1063 (Wyo.2009). In this argument, Gomez fails to give an exact description of what it is that the district court excluded that he believes should have been called to the jury's attention. If it was the expert's opinion that Gomez did not intend to harm Officer Gulbrandson, then the district court's ruling was sound. However, as the transcript bears out, the expert's theory was that Gomez's view of Officer Gulbrandson, and his police cruiser, was obscured by trees, darkness, and the snowy/rainy weather. The expert witness was permitted by the district court to continue his expert analysis of the video tape taken from Officer Gulbrandson's patrol car and the crime scene in general, as well as his opinion that it would have been very difficult for Gomez to see Officer Gulbrandson and his police vehicle. We see no indication in the record on appeal that the district court frustrated the expert witness's ability to fully explain his take on the accident scene. Given these circumstances, the limited objections sustained with respect to the expert's testimony do not arise to the level of an abuse of discretion, nor did it deprive Gomez of his right to compulsory process.

**Instruction on Voluntary Intoxication**

[¶ 29] Gomez concedes that he did not offer an intoxication instruction and such an instruction was not given by the district court sua sponte. It is not disputed that Gomez was intoxicated the night of the instant crimes. Because Gomez did not offer an instruction of his own, we review his claim for plain error. Under the plain error standard, Gomez must show that a clear and unequivocal rule of law was violated, the violation clearly appears in the record, and it resulted in denial of a substantial right to his

material prejudice. *Morris v. State*, 2009 WY 88, ¶ 15, 210 P.3d 1101, 1105 (Wyo.2009).

[¶ 30] We have held that:

Due process requires the trial court to give a correct instruction to the jury that details the defendant's theory of the case when the theory is supported by competent evidence and is recognized by statute or case law. *Holloman v. State*, 2002 WY 117, ¶ 15, 51 P.3d 214, 219 (2002). This Court has recognized that intoxication is a defense to a specific intent crime. *Wilks v. State*, 2002 WY 100, ¶ 21, 49 P.3d 975, 984–85 (2002). An "attempt" is a "specific intent" crime. *Reilly v. State*, 2002 WY 156, ¶ 8, 55 P.3d 1259, 1262 (2002). Thus, Mr. Hernandez was entitled to have the jury instructed on this theory that he was too intoxicated to form the intent to commit the offense of attempted second degree murder if there was competent evidence to support the theory.

*Hernandez v. State*, 2007 WY 105, ¶ 29, 162 P.3d 472, 480 (Wyo.2007).

[¶ 31] Gomez's defense was not that he was too intoxicated to form specific intent. His defense was that his view was so obstructed that he could not see either Officer Gulbrandson or his squad car. As previously noted more fully in our discussion of the instruction concerning Gomez's intentionally causing bodily injury to a peace officer engaged in his lawful duties, the body of the instruction correctly described a general intent crime and not a specific intent crime. See *King v. State*, 2002 WY 27, ¶¶ 22–23, 40 P.3d 700, 705–6 (Wyo.2002). If Gomez had defended on the basis that he was too intoxicated to form the specific intent to attempt to injure Officer Gulbrandson, then he would have been entitled to such an instruction had he asked for one. The record is clear that Gomez did not defend on that theory, but rather that he was unable to see Gulbrandson and hitting him was an accident. We also see in the record on appeal a tacit strategy by the defense to use Gomez's alcohol problems as a sword, rather than a shield. His real theory was that the "system," and the State, had failed to provide him the services he needed to overcome his drinking problems. Thus, the seriousness of the consequences of his acts that night and the punishment for them should have been lessened to that which could be meted out in juvenile court.

[¶ 32] For these reasons, we conclude that although the record demonstrates a possibility that an intoxication defense could have been pursued by Gomez, it was not. Secondarily, Gomez does not point to a clear and unequivocal rule of law that such an instruction must be given, even when a defendant does not request it. Finally, we also conclude that the failure of the district court to give such an instruction sua sponte, did not prejudice Gomez under the circumstances of this case.

## CONCLUSION

[¶ 33] Although our review of most of the issues raised is limited by the plain error rule, we hold there is not a clear and unequivocal rule of law that would persuade us to decide that the Wyoming's juvenile court statute runs afoul of the rule articulated by the United States Supreme Court in *Apprendi*. The district court did not abuse its discretion in denying Gomez's motion to transfer his case to juvenile court. The State's evidence was sufficient to sustain the conviction of Gomez for intentionally causing bodily harm to a peace officer in the performance of his duties. The testimony of Gomez's expert witness was not curtailed in a way that constituted either an abuse of discretion by the district court, or a violation of Gomez's right to compulsory process. Finally, the district court did not commit error in failing to sua sponte instruct the jury with respect to voluntary intoxication. The judgment and sentence of the district court are affirmed in all respects.